### RONEY v. COMMISSIONER OF INTERNAL REVENUE.

No. 3492.

Circuit Court of Appeals, Fourth Circuit.

Oct. 3, 1933.

Wilton H. Wallace, of Washington, D. C. (E. F. Colladay, Joseph C. McGarraghy, and Colladay, McGarraghy, Colladay & Wallace, all of Washington, D. C., on the brief), for petitioner.

William Cutler Thompson, Sp. Asst. to Atty. Gen. (Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and J. A. Lyons, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving income tax of the petitioner for the year 1928 in the amount of $35,373.07. The opinion of the Board of Tax Appeals is reported in 26 B. T. A. 1213. The facts were stipulated and are as follows:

In 1919 the petitioner and one Morris Schapiro, who were engaged in the wholesale scrap iron and metal business, purchased from the Gwynnbrook Distillery, a corporation, the land, building, and equipment of said distillery located at Gwynnbrook, Md., with the intention of dismantling the distillery and selling the salvage material. They had purchased other distilleries in Kentucky, Maryland, and Pennsylvania, and disposed of them in that manner. After commencing dismantling operations, the owners decided that it would be profitable to manufacture whisky for medical purposes.

Late in the year 1920 a permit to manufacture medicinal whisky at Gwynnbrook Distillery was secured from the Commissioner of Internal Revenue, and shortly before its expiration this permit was renewed for another year. Between November, 1920, and January, 1922, the partnership Gwynnbrook Company, whose members were the petitioner and

his partner Schapiro, manufactured whisky under these permits. To carry on this business, they hired a man who had been superintendent of the former corporation. The whisky manufactured was at first placed in a government concentration warehouse and warehouse receipts were given for it. In 1925, when the government ordered the removal of the whisky from the concentration warehouse, it was placed in the warehouse of the Baltimore Distillery Company. The original warehouse certificates were surrendered, and new certificates were issued to the owners of the whisky.

In 1925 the Gwynnbrook Company entered into an agreement to sell all the whisky represented by the certificates. Under this agreement, whisky was to be delivered and paid for at intervals during the years 1927 to 1932. In accordance with this arrangement, the whisky represented by certificates 1 to 9, inclusive, was sold in 1927. In 1928 the balance of the whisky represented by certificates 10 to 60 was transferred to and paid for by the purchasers. It was stipulated that the partnership, Gwynnbrook Company, realized a net profit of $630,027.29 in 1928, when the whisky covered by the certificates was sold, and that one-half of the net profit is taxable to this petitioner. The petitioner reported his profit as capital net gain.

The Commissioner of Internal Revenue held that the profit realized on the sale of the whisky in the year 1928 was taxable as ordinary income and this holding was affirmed by the Board. The petitioner contends that the profit realized was taxable as "capital gain" under section 101 of the Revenue Act of 1928 (26 USCA § 2101), which defines a capital asset as: " * * * Property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *"

The sole question involved is whether the whisky manufactured by the petitioner and his partner during the years 1920, 1921, and 1922 was stock in trade properly to be included in an inventory and property held by the taxpayer primarily for sale in the course of his trade or business, or was property held for more than two years as an investment. It is also contended on behalf of the petitioner that he and his partner were principally engaged in the junk business and were not actually engaged in the manufacture of whisky.

That the petitioner did not purchase the distillery with the primary intention of operating it seems clear, but that the intention with which the purchase was made was changed is equally clear, and the partnership undoubtedly went into the business of manufacturing whisky. A permit was secured from the government for the manufacture of whisky as distillers, and the distillery was operated through two distillery seasons, 1920–21 and 1921–22. The fact may not be disputed that a person may be engaged in more than one trade or business (Mente v. Eisner [C. C. A.] 266 F. 161, 11 A. L. R. 496), and the fact that petitioner and his partner were in the junk business does not at all negative the fact that they were also in the distillery business, a business for which they had to procure a permit from the government. As was said by the Board of Tax Appeals in its opinion: "The production involved the use of a fully equipped whiskey-distilling plant and the employment of men. The petitioners carried on their distilling operations under the firm name of the Gwynnbrook Company and gave their product the name of 'Gwynnbrook Pure Rye Whiskey.' The whiskey was stored prior to sale, and was sold, under the firm name. While the whiskey was in storage it was held primarily for sale, the time to depend upon market conditions. The time must have appeared to be ripe in 1925, for the whole lot was then sold by the partnership for future deliveries. The manufacture, storage, and sale of the whiskey was all in accordance with the plan adopted before distilling operations were commenced."

It may be mentioned, incidentally, that the aging of whisky might be properly regarded as a part of the process of its manufacture.

The whisky in question was the stock in trade of the partnership operating as the Gwynnbrook Company, and was property proper to be included in the inventory of the partnership.

We think the case is controlled by a decision of the Supreme Court in Renziehausen v. Lucas, 280 U. S. 387, 50 S. Ct. 156, 74 L. Ed. 501.

The activities of the partnership with regard to the whisky business between the years 1922 and 1925 were continuously carried on, even though slight, and consisted in paying warehouse charges and transporting the whisky from one warehouse to another in the year 1924 and again in the year 1925, but very slight activity constitutes "doing business."

when the end is profit. Blair v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43; Harmar Coal Co. v. Heiner (C. C. A.) 34 F.(2d) 725; Sloan v. Commissioner (C. C. A.) 63 F.(2d) 666.

We are of the opinion that the decision of the Board was correct, and the order is accordingly affirmed.