ESTATE OF HERBERT B. HATCH, DECEASED, JUANITA O. HATCH, EXECUTRIX, AND AMERICAN TRUST CO., EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JUANITA O. HATCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HERBERT B. HATCH, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18482, 18483, 18485.   Promulgated February 23, 1950.

*Frederic D. Dassori, Esq.,* for the petitioners.
*C. W. Nyquist, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax as follows:

| Petitioner | Docket No. | Taxable Period | Deficiency |
|---|---|---|---|
| Estate of Herbert B. Hatch, deceased | 18482 | Jan. 1–Apr. 9, 1944 | $3,702.31 |
| Juanita O. Hatch | 18483 | 1944 | 2,199.38 |
| Herbert B. Hatch, Jr | 18485 | 1944 | 187.22 |

The sole issue is whether the Commissioner erred in determining that a part of the gain realized by Herbert B. Hatch, Juanita O. Hatch, and Herbert B. Hatch, Jr., upon a sale involving their partnership business and assets in 1944 is taxable to them as ordinary income.

The facts are stipulated.

Herbert B. Hatch, Juanita O. Hatch, his wife, and Herbert B. Hatch, Jr., their son, were individuals engaged in the automobile business in Stockton, California, prior to 1944. Their individual returns for the taxable periods involved were filed with the collector of internal revenue for the first district of California.

The Hatches formed a partnership on December 1, 1942, to engage for an indefinite term "in the business of selling, distributing, repairing, and servicing motor vehicles and motor vehicle parts both at wholesale and retail," under the name of Hatch Chevrolet Co. The business was operated under a franchise from the Chevrolet Motor Division of General Motors Corporation. The record does not show whether that franchise was either valuable or transferable.

The Hatches "as co-partners transacting business under the firm name and style of HATCH CHEVROLET COMPANY," parties of the first part, executed an "Agreement of Sale" on February 16, 1944, with King M. Chase, party of the second part, providing in part:

\* \* \* that first parties will sell to second party all of the business and assets of HATCH CHEVROLET COMPANY, a co-partnership, hereinafter listed, and the transaction shall be escrowed until a complete inventory and appraisement has been completed. However, \* \* \* said party of the second part shall take over possession of the physical assets of the business \* \* \* on \* \* \* February 21, 1944, and thenceforward shall operate said business to all intents and purposes as though this transaction had been completed and title thereto passed to the party of the second part.

Second party shall, upon taking possession, have permission to operate the business under the name of HATCH CHEVROLET COMPANY for a limited period of time to enable him to make the necessary arrangements for the future title or trade name of said business.

The tentative sales price of said business and assets is the sum of \* \* \* ($175,229.51). This figure or amount may be appreciated or depreciated according to the results of the inventory to be taken.

\* \* \* \* \* \* \*

The Hatches executed a "Bill of Sale" on March 3, 1944, providing that they, "as co-partners transacting business under the firm name and style of HATCH CHEVROLET COMPANY, the Parties of the First Part, in consideration of the sum of * * * ($161,807.77) * * * to them in hand paid by KING M. CHASE, the Party of the Second Part, the receipt whereof is hereby acknowledged, do by these presents sell unto the Party of the Second Part, his executors, administrators and assigns, the following described personal property [listed in a schedule] * * *." Chase paid $5,000 of the purchase price at the time of the agreement of February 16, and he paid the remainder of the purchase price by means of a check dated March 3, 1944, and payable to the order of the Hatches, "Co-Partners." The property transferred to Chase included all of the assets of the partnership except the General Motors franchise, two automobiles, cash in a substantial amount, and the partnership name. Chase assumed a part, but not all, of the liabilities of the partnership.

The assets of the partnership which were sold to Chase were not distributed in kind to the Hatches prior to the sale thereof. His check dated March 3 was credited to the bank account of the Hatches, "Co-Partners," on March 6, 1944. Partial distributions were made to them by checks drawn on that account beginning in June, 1944.

Herbert B. Hatch died a resident of Stockton, California, on April 9, 1944. Juanita O. Hatch and American Trust Co. are the executrix and executor, respectively, under the last will and testament of Herbert B. Hatch.

The partnership reported on its amended return for the fiscal year ended June 30, 1944, filed on September 19, 1944, a long term capital gain from the sale to Chase in the amount of $36,669.07, $18,334.54 of which was taken into account and divided as follows:

| | |
|---|---|
| Herbert B. Hatch | $9,778.42 |
| Juanita O. Hatch | 7,089.35 |
| Herbert B. Hatch, Jr | 1,466.77 |

The Hatches separately reported those amounts on their respective individual returns for the taxable periods involved as "Gain or loss to be taken into account."

The Commissioner allowed the partnership a long term capital gain from the sale to Chase in the amount of $22,486.36 (recognized to the extent of $11,243.18), determined that the gain from the sale in the amount of $14,182.71 was ordinary income to the partnership from the sale of property other than capital assets, and made corresponding proportionate adjustments in the individual income of Herbert B. Hatch, Juanita O. Hatch, and Herbert B. Hatch, Jr., for the taxable periods involved, on the ground that "the transaction constituted a sale by the partnership of assets held pursuant to its business; that

the * * * [accounts receivable and inventories] transferred in the sale were not capital assets under section 117, Internal Revenue Code, and gain realized thereon was not long-term capital gain."

The parties stipulate that the cost of "the interests of the partners or the assets of the partnership (as the Court may determine) which were sold to Chase" was $125,138.70 and the gain was $36,669.07.

The only difference between the parties in this case is whether the sale to Chase was a sale by the individual partners of their partnership interests, or was a sale by the partnership of some of the partnership assets subject to some of the liabilities. The petitioners contend that the Hatches sold their individual interests in the partnership, those interests were capital assets, and the entire gain was a capital gain only one-half of which would have to be reported as taxable income. The respondent has determined that the partnership sold some of its assets subject to some of its liabilities, some of the assets sold were capital assets, and some were not capital assets, with the result that the profit on those assets sold which were not capital assets is taxable in its entirety to the partners as a part of their distributive share of the net income of the partnership.

Each partner's interest in the partnership would have a basis for gain to the partner, and if it was sold, the gain would be the difference between the amount realized and that basis, which gain would be income of the partner, not of the partnership, and would be a capital gain if the interest had been held long enough. *H. R. Smith*, 10 T. C. 398; affd., 173 Fed. (2d) 470; certiorari denied, 338 U. S. 818. Cf. *Joseph L. Merrill*, 9 T. C. 291; affd., 173 Fed. (2d) 310. Likewise, each asset of the partnership would have a basis for computing gain or loss to the partnership, and upon the sale of any of those assets by the partnership the gain would be income to the partnership and would be the difference between the amount realized and the basis to the partnership. The gain on any of the assets which were capital assets held for a long enough period by the partnership would be a capital gain, whereas the gain from the sale of any of the assets which were not capital assets would not be a capital gain, but would be ordinary income, taxable in its entirety to the partnership. The total of the basis of the partnership assets to a partnership does not necessarily equal the total of the bases to the partners of their interests in that partnership at any given moment. See Regulations 111, sec. 29.113 (a) (13)–2. Here the stipulation would indicate that the cost basis was the same whether the sale was a sale of partnership assets or a sale of partners' interests in the partnership. However, the gain was computed on a partnership return as a gain from a sale by the partnership of some of its assets, and the Commissioner has so regarded it.

Furthermore, it is not easy even to imagine what part of the basis of each individual partner for his partnership interests would be applied against his share of the amount realized from the sale in question which involved some but not all of the partnership assets. No such method of computing a gain is authorized for Federal tax purposes.

The stipulated facts show that the partners made no effort to sell and Chase did not buy their individual interests in the partnership or any part of those interests, but, on the contrary, the subject of the sale was a part of the partnership assets subject to a part of the partnership liabilities. The partnership was not terminated by the sale. It retained some of its assets and the amount realized from the sale. Later it distributed its assets to the individual partners in liquidation. The sale was reported and the gain computed on the partnership return for its fiscal year as a partnership transaction and each individual partner merely reported on his separate return on a calendar year basis a part of the gain from the sale as a part of his distributive share of the net income of the partnership. The only change made by the Commissioner was to hold that a part of the gain was ordinary income rather than a capital gain. The stipulated facts do not support the petitioners' contention that the gain of the partnership should be taxed to the partners as capital gain upon the theory that they sold a portion of their partnership interests, which interests were capital assets. The Commissioner did not err.

*Decisions will be entered for the respondent.*