CEDAR VALLEY DISTILLERY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM WEISMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22785, 22786. Promulgated April 24, 1951.

*Aaron Holman, Esq.*, and *I. Newton Brozan, Esq.*, for the petition-ers.

*Aaron Resnick. Esq.*, for the respondent.

MURDOCK, *Judge:* The parties have stipulated that if the income of Products should not be taxed to Distillery under section 22 (a) or section 45, then it had a fiscal year ended July 31, 1944, and its correct net income for that period was $104,190.40. The Commissioner, in determining the deficiencies against Distillery, disregarded the fiscal year of Products, computed amounts to represent its net income for each of the calendar years 1943 and 1944, and added those amounts to the income of Distillery. He purported to act under section 45 or 22 (a) of the Internal Revenue Code.

Section 45 is entitled "Allocation of Income and Deductions." It applies to two or more organizations "owned or controlled directly or indirectly by the same interests." It authorizes the Commissioner to "distribute, apportion, or allocate gross income or deductions between or among such organizations * * * if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of such organizations * * *." Rawick had a 30 per cent interest in Products and no interest in Distillery. Fifty-two stockholders owned about 46 per cent of the stock of Distillery and had no interest in Products. Weisman, who owned about 54 per cent of the stock of Distillery, also owned an interest in Products. It is at least doubtful whether this situation discloses the control which Congress had in mind to justify the application of section 45. However, that question need not be decided.

The Commissioner has not distributed, apportioned, or allocated "gross income or deductions" between Distillery and Products. Instead, he has attempted to compute the net income of Products for the calendar years 1943 and 1944 and has added all of that net income to the income of Distillery, ignoring the partnership and the partners for tax purposes. Justification for such action is not found in section 45. *Miles-Conley Co.*, 10 T. C. 754, affd., 173 F. 2d 958. It was not enacted to consolidate two organizations for tax purposes by ignoring one completely, but merely to adjust gross income and deductions between or among certain organizations. *Chelsea Products, Inc.*, 16 T. C. 840. Cf. *Seminole Flavor Co.*, 4 T. C. 1215.

There was here no evasion of taxes. Distillery had never gotten its bottling and rectifying plant in regular operation probably because it ceased to distill spirits for sale generally and confined its distilling entirely to Government work beginning on August 1, 1942. It had never used its bottling and rectifying plant except to bottle, for one customer, some whisky which it had previously distilled. The evidence is that many other bottling plants were idle. Distillery was glad to find a customer who would pay it something for oper-

ating its bottling and rectifying plant. This is not a situation where a profitable part of an established business was taken from Distillery so that the income would be diverted to others with a consequent saving of taxes. It was, on the contrary, a new enterprise started by Rawick. The Commissioner would have an aura of illegality and sham hover about what was done. There is no doubt that Products and Distillery had a number of interests in common and were mutually helpful. However, they kept separate books and the net income of each can be determined. It does not appear from the record that any illegal act was involved, but legal or illegal, it is a fact that Rawick, acting for Products, obtained liquors in bulk in Cuba and sold them as bottled goods at wholesale in the United States for a profit, after paying Distillery for the importing and bottling. His activities were real and not a sham. They produced income and that income belonged to his partnership. The Commissioner completely ignores Rawick and regards even his share as belonging to Distillery. There is evidence that Distillery did not care to engage in the business as a principal because of the risk involved. It preferred merely to be paid for such services as it rendered in connection with the business carried on by Products. The separateness of the two organizations is fully justified by the difference in interests alone. It is not necessary to do anything with the gross income or deductions of Products to prevent evasion of taxes. The evidence is that the amounts paid by Products to Distillery for services performed by Distillery for Products were fair and reasonable. Therefore, nothing need be done with the gross income or deductions of Products in order clearly to reflect the income of the two organizations. Section 45 has no application to the facts shown by this record.

Section 22 (a) contains a general definition of gross income. The evidence shows that the amounts which the Commissioner added to the income of Distillery, representing the alleged net income of Products for the calendar years 1943 and 1944, was net income of Products after Products had paid Distillery in full for all services rendered. Those amounts did not represent income of Distillery. The stipulation shows that there is no dispute about the amount of net income either of Products for its fiscal year or of Distillery for its calendar years if the net income of the two is not to be combined. The Commissioner erred in adding any amount to the income of Distillery to represent net income of Products.

That holding obviates the necessity of considering whether Weisman's income for 1943 should include $70,059.91, representing a distribution from Distillery and whether Distillery is entitled to deduct that same amount as compensation for Weisman. The parties have stipulated that in the event the income is not all income of Distillery, Weisman received no distribution of taxable income from Distillers

in 1943. Distillery never claimed that it was entitled to deduct the amount in question as compensation to Weisman.

The parties have argued in their briefs the question of whether Weisman should include in his 1944 income as his distributive share of the partnership income for its fiscal year ended July 31, 1944, if it is not to be included in the income of Distillery, 40 per cent or 70 per cent of that partnership income. The Commissioner argues for 70 per cent on the theory that Bernard Weisman should not be recognized as a partner and his share should be taxed to his father. Weisman claims that he was entitled to only 40 per cent. However, no such issue need be decided because it is not properly before the Court. Weisman, reporting on a calendar year basis, did not report any Products income in his 1943 return because the first fiscal year of that partnership ended July 31, 1944. He included an amount in his 1944 return to represent his distributive share of the net income of Products for its fiscal year ended July 31, 1944. The Commissioner, in determining the deficiency against Weisman for 1944, eliminated the $37,145.35 so reported and explained:

It is held that the Cedar Valley Products Company partnership income is distributable to Cedar Valley Distillery, Inc., and not by [sic] the partners as reported on the partnership return for the year 1944. The amount reported by you of $37,145.35 has accordingly been eliminated from your taxable income.

The respondent, in his answer in the Weisman case, has made no affirmative contention and prays that his "determination be in all respects approved." Since the Commissioner did not place 70 per cent of the distributive income of Products in the income of Weisman for 1944 in determining the deficiency for that year, does not affirmatively plead that 70 per cent should be included in his income, and does not ask for an increased deficiency for that year, the Court is not justified in considering any such issue.

This is not changed by the fact that in the statement attached to the notice of deficiency, in so far as that statement explains the determination of the deficiency for the preceding year, 1943, the following appears:

In the event the Cedar Valley Products Company is determined by the Court to be a partnership for Federal income tax purposes, then in the alternative it is held that your taxable share of the income of Cedar Valley Products Company for its taxable year ended July 31, 1944 includible in your income for the calendar year 1944 is $72,933.28 under the provisions of Section 22 (a) of the Code. which amount represents a 70% interest; the alleged 30% interest of your son, Bernard Weisman, as a partner, is not recognized for income tax purposes.

Inherent in the determination of the deficiencies against Weisman for 1943 and 1944 is the proposition that all of Products' net income for 1943 and 1944 belonged to Distillery and no part of it is to be

taxed to Weisman as his distributive share of the income of a partnership. The Commissioner actually eliminated from Weisman's income for 1944 the distributive share of that income which Weisman had reported. He did not put it back in any form whatsoever. The determination of a deficiency by the Commissioner is presumed to be correct and certainly Weisman had no burden of proof under the determination for 1944 to show that his distributive share of the net income of Products for 1944 was not greater than the amount which he reported. This is not like a case in which the action of the Commissioner in including a certain amount in income might be supported on one of several grounds. It has been held in some cases like that that the taxpayer does not necessarily win by showing that one of the grounds was wrong. Here the Commissioner did not include any amount in Weisman's income for 1944 representing his distributive share of the net income of Products for its fiscal year ended July 31, 1944, or any amount representing the same income in some other form. The Commissioner, in order to protect himself, could have taken a position in determining the deficiencies for 1944 which was inconsistent with the position taken by him in determining the deficiency for 1943; i. e., he could have included 70 per cent of the income of Products for its fiscal year ended July 31, 1944, in the income of Weisman for 1944. That would have placed the burden of proof upon Weisman to show that he was not entitled to 70 per cent of the income of Products, but the Commissioner did not do that and he cannot accomplish the same result by the peculiar alternative statement which he made in the statement attached to the notice of deficiency as an explanation of his determination of the deficiency against Weisman for 1943. Also, he could have pleaded this issue in the 1944 case as an alternative but he did not do that. The Commissioner must plead affirmatively, must assume the burden of proof and, if necessary, claim an increased efficiency whenever he asks the Court to take a position inconsistent with and more favorable to him than that taken by him in determining the deficiency.

Weisman contends that the gain from the sale of the warehouse receipts should be taxed as a capital gain and not as ordinary income. His first basis for that contention is that the Theodore Netter Co. partners sold the partnership interests which were capital assets. The facts fully refute that contention. The partners did not sell their interest in the partnership and the purchaser did not buy those interests. The Theodore Netter Co. partnership continued and Weisman and Bauer continued to own the partnership interests after the sale. The sale was of partnership assets and was made by the partnership. *Estate of Herbert B. Hatch*, 14 T. C. 251.

Weisman next contends that the warehouse receipts were capital assets in the hands of the partnership and the gain was a long term

capital gain. There is no dispute as to the profit realized by the partnership. The Commissioner regarded the entire gain from the transaction as ordinary income of the partnership, rather than capital gain, in computing Weisman's distributive share of the net income of the partnership for 1944. He argues in his brief that the entire gain was from the sale of the warehouse receipts, Weisman's argument applies only to those receipts and it seems proper under such a situation to consider only the receipts.

Capital assets are defined in section 117 (a) (1) to include all property with certain stated exceptions. The Commissioner argues that the warehouse receipts come within the following exception: "Stock in trade of the taxpayer or other property of a kind which would be included in the inventory of the taxpayer if on-hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." There is no doubt that the partnership intended to continue the bottling and rectifying business theretofore carried on by the corporation but it needed permits to begin that business. It made unsuccessful applications for permits, and, not later than May 22, 1944, when it withdrew its applications for permits, abandoned all intention of engaging in any business involving the warehouse receipts. It never took delivery of any of the whisky covered by the warehouse receipts and it never conducted any business in which the use of that whisky was involved. It merely held the receipts for a while until it abandoned all hope of obtaining permits and then sold the receipts. It argues that the warehouse receipts under those circumstances never represented stock in trade of the partnership or other property of a kind which would properly be included in any inventory of the partnership if on hand at the close of a taxable year and further that the warehouse receipts were not held by the taxpayer primarily for sale to its customers in the ordinary course of its trade or business.

The warehouse receipts were not property held by the taxpayer primarily for sale to its customers in the ordinary course of its trade or business. Cf. *Thomas E. Wood*, 16 T. C. 213. It never had any trade or business, it never had any customers and it never had any intention of selling the warehouse receipts to customers of any trade or business in which it ever intended to engage. If it had ever actually started in the business in which it intended to engage, it would have used the warehouse receipts to obtain whisky for use in its bottling business but it sold the warehouse receipts before it made any progress whatsoever towards that end.

A more difficult question is whether the warehouse receipts should be regarded as stock in trade or other inventoriable property. Section 22 (c) authorizes the use of inventories whenever they are necessary in order clearly to determine the income of any taxpayer.

Section 29.22 (c)–1 of Regulations 111 provides that inventories are necessary to reflect net income clearly in every case in which the production, purchase or sale of merchandise is an income producing factor. If the partnership had ever actually started in the business in which it intended to engage, the whisky obtained on the warehouse receipts would have been the raw material held for use in that business. Inventories probably would have been necessary to reflect the income of that business clearly and, of course, the whisky could not be regarded as a capital asset once the business was started. However, the production, purchase, or sale of merchandise never became an income producing factor of any business carried on by the Theodore Netter Co. partnership. That partnership never took possession of any of the merchandise represented by the warehouse receipts and never went into the business. Property which would be inventorial under some circumstances is not necessarily inventorial under all circumstances. Here there was no occasion for this partnership to inventory the warehouse receipts so long as it was not even in position to engage in producing or merchandising any product. Cf. *John D. Roney*, 26 B. T. A. 1213, affd., 67 F. 2d 165, certiorari denied, 290 U. S. 705. The Commissioner would probably have denied it the right to use inventories at least until it was in a position to engage in business. Certainly the use of inventories was not necessary in computing the income of the partnership while it was merely holding the warehouse receipts. Cf. *Atlantic Coast Realty*, 11 B. T. A. 416, 419. The purchase and sale of the warehouse receipts turned out to be an isolated transaction not connected with any business regularly carried on by the partnership. Congress intended the capital gain provisions to apply to the sale of property where, as here, it was bought, held, and sold without ever being related to any business regularly carried on. *Thomas E. Wood, supra.* The gain was a capital gain of the partnership and the property was held for more than 6 months.

Another issue relates to the use of the installment method by Weisman in reporting income for 1944 from the sale of the warehouse receipts. Apparently he would argue that the distributive income of the partnership for 1944 should include only a part of the profit. One of the arguments which the Commissioner makes against this contention is sound and other features of the problem need not be discussed. The partnership did not file a timely return for 1944 but finally, after its failure to file a return for an earlier period was called to its attention by a revenue agent, it filed a return for 1944 on August 9, 1946, in which it reported income from the sale of its assets as a long term capital gain on the installment basis. Weisman had filed a timely return for 1944 but had not reported any gain on the sale or any income from Theodore Netter Co. He filed an amended return

on August 6, 1946, in which for the first time he reported gain from the sale of the partnership assets and reported as his income one-half of the long term capital gain belatedly reported by the partnership on the installment basis. The following from *Sarah Briarly*, 29 B. T. A. 256, is apposite:

* * * These provisions bestowed a benefit on taxpayers that had not theretofore had statutory approval. Where benefits are sought by taxpayers, meticulous compliance with all named conditions is required. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245. The statute here involved provides that in the case of an installment sale of real estate "the income may * * * be returned" on the installment basis. This, in our opinion, requires both timely and affirmative action on the part of those seeking to take advantage of the benefits conferred by the statute. As pointed out above, taxpayers voluntarily filing returns and making timely election are bound by their choice. To allow a choice where the taxpayer sits supinely by until by the diligence of the Government it is discovered that a tax is due would put a premium on inertia that certainly is not within the spirit of our system of taxation. If any class of taxpayers is entitled to claim a preference, it consists of those who have complied with the statute.

See also *W. T. Thrift, Sr.*, 15 T. C. 366. The election to use an installment basis under the circumstances of this case was not timely.

Weisman contends that the negligence penalty should not be imposed because of his failure to file a timely return for 1943. He has failed to show, however, that there was reasonable cause for the delinquent filing. His testimony indicates that he was expecting one of the employees of Distillery to prepare some figures for his 1943 return and when that employee went into the armed services he (Weisman) assumed that a return had been filed. All of the evidence bearing upon this subject has been carefully considered and the conclusion has been reached that reasonable cause for the delinquency has not been shown. An individual can not be relieved of the penalty for failure to file a timely return where he relies on some individual who in the past has had something to do with the preparation of his returns and pays no further attention to the matter when that person is called into the armed services.

*Decisions will be entered under Rule 50.*