PHILADELPHIA-BALTIMORE STOCK EXCHANGE (FORMERLY PHILADELPHIA STOCK EXCHANGE), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32231. Promulgated November 28, 1952.

*Howard H. Yocum, Esq.*, for the petitioner.
*Edward Pesin, Esq.*, for the respondent.

### OPINION.

LEMIRE, *Judge:* The respondent determined deficiencies in income tax and declared value excess-profits tax for the year 1944 in the respective amounts of $4,531.51 and $298.85, as a result of disallowing

---

a deduction of $34,140, claimed by petitioner as payments from its Gratuity Fund to beneficiaries of deceased members, and a deduction of the sum of $900 paid to the widow of a former employee. Petitioner contends, in the alternative, that it is entitled to a deduction on account of payments made from the Gratuity Fund to the extent it reported, in a single return, the income from investments of the Gratuity Fund. All the facts have been stipulated and are found accordingly. They may be summarized as follows:

Petitioner is an unincorporated association organized about 1790 under the laws of the State of Pennsylvania for the purpose of providing an auction market for trading in securities. Its return for the period involved was filed with the collector of internal revenue for the first district of Pennsylvania. Petitioner operates as a security exchange duly registered with the Federal Securities and Exchange Commission. It has currently 200 members.

The operation of the Exchange is provided for, substantially, by dues, income from investments, listing fees, and service charges, in like manner generally as the various regional National Securities Exchanges.

The petitioner in 1875 established and has since maintained a fund known and described as a Gratuity Fund. Since its inception the Gratuity Fund has been held and managed by trustees. In 1944 the trustees consisted of the president, vice president, and three other members of petitioner appointed by its board of governors.

The fund, however arising, must be kept separate and distinct from all other funds of the petitioner and it can be used solely for the payment of gratuities in accordance with the constitutional provisions relating thereto. The investment of unexpended funds is within the discretion of the trustees. Since its establishment the sources of revenue from the fund have been transfers of funds from the petitioner pursuant to resolutions of the board of governors between April 7, 1881, and May 1, 1918, amounting to $136,700, fees payable to the fund by members upon their admission to membership in the Exchange, assessments made upon members as contributions upon the death of a member, annual dues, and income from invested funds.

All funds transferred by resolution of the board of governors, fees, assessments, and income from the Gratuity Fund investments, are paid to the trustees and held by them for the purpose of the fund.

The funds of the Exchange and of the trustees of the Gratuity Fund are separately held and accounted for in separate books and records. Receipts of income from investments of the Gratuity Fund are payable to the trustees and deposited in the account of the trustees. Assessments collected from the members upon the death of a member are paid over to the trustees of the Gratuity Fund.

Upon the death of a full member of petitioner and within 30 days thereof the trustees were required, under the constitutional provisions operative in the taxable year 1944, to pay out of the Gratuity Fund certain benefits to the widow of such deceased member, or to his child or children, or the issue of deceased children, or among the widow and child or children and issue of deceased children, or failing such widow, or child or issue of deceased child or children, to his next of kin, as defined in the intestate laws of the State of Pennslyvania in force at the time of such member's death, as they in their discretion may determine.

Under the constitutional provisions operative in the year 1944, the gratuities payable varied from $7,500 upon the death of a member admitted to membership on or before May 1, 1918, to $1,000 upon the death of a member admitted to membership after May 1, 1944, who was 70 or more years of age at the time of his admission to membership. On December 31, 1944, there were 37 members upon whose death a gratuity of $7,500 was payable. The assessment upon members upon the death of a member under the constitution of June 17, 1876, was $10; on September 27, 1886, it was increased to $15; and on May 5, 1906, it was increased to $20. On March 15, 1944, the constitution was amended to provide that the assessment of $20 shall be waived whenever the assets of the Gratuity Fund are sufficient to pay any gratuity payable on the death of a member without reducing such assets below the sum of $300,000.

The assets of the Gratuity Fund as of January 1, 1944, and December 31, 1944, were as follows:

|  | Jan. 1, 1944 | | Dec. 31, 1944 | |
|---|---|---|---|---|
|  | At market value | At cost | At market value | At cost |
| Securities | $308,175.40 | $341,268.12 | (Not shown) | $325,176.49 |
| Cash | 2,570.35 | 2,570.35 | ----------- | 2,948.32 |
| Totals | $310,745.75 | $343,838.47 | ----------- | $328,124.81 |

The net loss of assets during the year 1944 on the basis of cost was $15,713.66. The capital gain on sales of securities was $4,866.55.

The disbursements from the Gratuity Fund during the year 1944 were as follows:

Payment of gratuities _____ $37,500.00
Other expenses _____ 384.40

37,884.40
Less assessments _____ 3,360.00

34,524.40

| Income from Gratuity Fund reported on 1944 return | $10, 208. 55 | |
|---|---|---|
| Other unreportable income | 3, 735. 64 | |
| Gain on sale of securities | 4, 866. 55 | $18, 810. 74 |

$15, 713. 66

The mandatory contributions that members of the Exchange have paid to the Gratuity Fund as initiation fees have always been credited to the capital account and have never been reported as income of petitioner. Assessments levied in accordance with the constitution and bylaws which govern the Gratuity Fund have never been reported by petitioner as income.

The amount paid the beneficiaries of a deceased member is by the terms of the constitutional provisions denominated a gratuity and is to be paid clear and free of all assessments and claims of every kind, and under no circumstances is interest demandable thereon.

Upon dissolution of petitioner each member would be entitled to receive his equity in the Gratuity Fund.

In the taxable year 1944 petitioner, as it has done in prior years, filed a single return in which it reported all the receipts of the Exchange and of the trustees of the Gratuity Fund and claimed deductions on behalf of both the Exchange and the trustees of the Gratuity Fund. Included in the income reported was the amount of $10,208.55 received by the trustees as taxable income from invested funds and the sum of $4,866.55 as gain from the sale of securities from the Gratuity Fund. Included in the deductions on behalf of the trustees was the sum of $34,524.40, computed as follows: amounts paid by the trustees as gratuities in the sum of $37,500 less assessments received in the amount of $3,360, or $34,140, plus miscellaneous expenses of $384.40. In determining his deficiency the respondent allowed as a deduction the sum of $384.40 but disallowed the amount of $34,140. Also included as a deduction claimed by the Exchange was the sum of $900, paid in 1944 to the widow of John C. Colehower, a former employee. The respondent disallowed the deduction.

John C. Colehower, who was associated with the Exchange in various capacities for 38 years, died in 1927. At the time of his death he was receiving an annual salary of $5,000.

On December 7, 1927, the board of governors of the Exchange adopted a resolution directing that a gratuity of $100 per month be paid to the widow of John C. Colehower until rescinded by the governing committee. In the resolution the governing committee expressed its high appreciation of the fidelity with which John C. Colehower always discharged the duties of his office.

On December 18, 1940, the governing committee approved a resolution of the finance committee adopted December 10, 1940, reducing the payment to the widow to $75 per month, effective January 1, 1941.

Pensions to officers of the Exchange have been paid over many years and to retiring employees from 1935 to and including 1951.

Petitioner contends that the amount of $34,140, paid by the trustees of the Gratuity Fund to the beneficiaries of deceased members, is deductible as an ordinary and necessary business expense. As an alternative, it argues that a deduction should be allowed to the extent the taxable income of the Gratuity Fund has been included in the income of the Exchange.

The Exchange was organized for the purpose of providing an auction market for trading in securities. Pursuant to its constitution and bylaws, petitioner created many years ago a trust, and the trust has since maintained a Gratuity Fund for the sole purpose of paying death benefits to beneficiaries of its deceased members.

The Gratuity Fund was and always has been a trust held by duly authorized trustees who administer the fund as fiduciaries. The trustees have sole custody of the funds, make the investments, receive the income, pay the death benefits and make the disbursements properly chargeable against the fund. The trustees are required to keep separate books and records and to maintain a separate depository for all the funds belonging to the trust. The Gratuity Fund is, therefore, a separate taxable entity subject to the imposition of the tax pursuant to section 161 of the Internal Revenue Code. It is our opinion that the operations of the Gratuity Fund and the operations of the business of the Exchange should be treated separately for Federal tax purposes.

The respondent in determining the deficiency has included in the income of the Exchange the income of the Gratuity Fund, but has disallowed certain deductions claimed by the trustees of the Gratuity Fund. There is no suggestion that the respondent acted under the provisions of section 45 of the Internal Revenue Code, nor do the facts presented justify the application of such section. Cf. *Chelsea Products, Inc.*, 16 T. C. 840; *Cedar Valley Distillery, Inc.*, 16 T. C. 870.

The income of the Gratuity Fund was not available to nor could it be used in the operations of the business of the Exchange. Such income is not properly taxable to the Exchange. Likewise, the payments to beneficiaries and the expenses paid in respect to the administration of the Gratuity Fund were made by the trustees of that fund and were not expenditures of the Exchange. Such payments, therefore, are not properly deductible by the Exchange as ordinary and necessary expenses of carrying on its business.

The record shows that the Exchange and the trustees of the Gratuity Fund kept separate books of account. Hence, the income of each can be determined.

A further question presented relates to the propriety of the respondent's action in disallowing as a deduction the amount of $900 paid in 1944 to the widow of a former employee of the Exchange. Petitioner contends that the payment of $900 is properly deductible as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Code.

The record shows that petitioner has made a monthly payment to the widow of John C. Colehower, a former employee, since his death in 1927. There is no showing that such payment was made pursuant to any contract or under an established pension plan. There is no evidence that the widow ever performed any services for petitioner or how petitioner directly benefited from such payment; nor is there any showing that such payments were for past compensation of the deceased employee or, if so, were reasonable in amount. The resolution authorizing the payment characterizes it as a "gratuity" payable until the resolution is rescinded. The fact that the amount to be paid was reduced in 1941 appears to confirm the fact that the payment was intended to be a gratuity. Obviously, the payment is not one deductible within the purview of Treasury Regulations 111, section 29.23 (a)-9. Cf. *I. Putnam, Inc.*, 15 T. C. 86, 92.

We hold that petitioner is not entitled to deduct the sum of $900, paid in the taxable year 1944 to the widow of a deceased employee, as an ordinary and necessary business expense. *McLaughlin Gormley King Co.*, 11 T. C. 569. On this issue the respondent is sustained.

In conclusion we hold that petitioner improperly reported the income and deductions of the Exchange and the Gratuity Fund in a single return, and the tax liability of petitioner is to be recomputed in accordance with the foregoing.

*Decision will be entered under Rule 50.*