**CONTINENTAL DISTRIBUTING CO., Inc.**

v.

**UNITED STATES of America.**

No. 53 C 1375.

United States District Court
N. D. Illinois, E. D.

May 10, 1956.

Johnson & Wiles, Chicago, Ill., for Continental Distributing Co.

Robert Tieken, U. S. Atty., Chicago, Ill., for United States.

LA BUY, District Judge.

This is an action by the plaintiff taxpayer to recover the sum of $22,312.28 being overpayment of income tax for the year 1949 based upon proceeds from the sale of whiskey warehouse receipts. The issue involved is whether the tax on the profit from such sale was to be on the basis of a long-term capital gain equalling $86,496.45, or on the basis of ordinary income amounting to $108,808.73, which amount was paid by the taxpayer on the allegedly erroneous assumption that it was taxable as ordinary income.

The plaintiff is a licensed wholesale liquor dealer whose business consists of purchasing from distillers and importers case goods of whiskey, wine, gin, scotch and cordials and in reselling the same at wholesale to licensed retail liquor dealers. It does not have and never did have a permit or license as a distiller, rectifier or bottler and has never engaged in buying and selling warehouse receipts as a broker.

The warehouse receipts sold in 1949 were acquired in two separate transactions. In addition to these plaintiff had purchased small lots occasionally from brokers for accommodation purposes, but these are not involved here. The first acquisition stems from a 2½% interest acquired by the plaintiff in the stock of Country Distillers, a distiller, when it knew there would be a distribution of a dividend on the certificates in the form of warehouse receipts. Such a "liquidating" dividend was made in 1943 to the plaintiff and in subsequent years, 1945–1947, the plaintiff exercised a right and privilege accorded to stockholders of Country Distillers to purchase additional receipts. These additional receipts are the ones presently involved which were sold in 1949.

The other group of receipts were acquired under a 1942 contract with Brown-Forman, a distiller, for whom plaintiff was a distributor. That contract provided in section 1 for supplying the plaintiff with case goods and in section 2 provided for the purchase of warehouse receipts by plaintiff covering bulk whiskey produced by Brown-Forman. By section 2 Brown-Forman effected its own object in offering contracts of this type; that it owned the brand name "Early Times" and since it did not itself have sufficient

financing to produce and age whiskey for that label in the amount it contemplated, it brought its franchised dealers into the production arrangement by getting the dealers to purchase the bulk whiskey rather than keeping the whiskey itself and to sell it to dealers only in bottled form when it had reached maturity. In this way the cost of financing the whiskey during the aging process was partly laid upon the franchised dealers, of whom plaintiff was one.

The record shows that from the receipts acquired through Country Distillers, the plaintiff bottled a total of 996 barrels; 990 barrels being represented by receipts acquired in the 1943 "liquidating" dividend of Country Distillers, and six barrels being represented by receipts purchased in subsequent years. The balance of the receipts acquired in 1945–1947 covering 1096 barrels were sold to Todes Brothers, warehouse receipts brokers, in 1949. From the receipts acquired under the Brown-Forman contract, the plaintiff bottled 104 barrels, leaving in its possession receipts covering 5221 barrels which receipts were the ones resold to Brown-Forman in 1949. The resale of these receipts to Brown-Forman was pursuant to a provision in the contract that they be offered first to Brown-Forman in the event of a sale. Plaintiff was the franchise distributor of each of these distillers and the bottling was done on the plaintiff's account under the distillers' trade-marks.

The government concedes that the ordinary business of the taxpayer was to sell liquor to retailers and this does not include the sale of liquor in bulk or in the form of warehouse receipts. It is urged that said warehouse receipts were stock in trade, acquired by the plaintiff to assure a backlog of inventory during the wartime shortage and were

" * * * property of a kind which could properly be included in the inventory of the taxpayer if on hand at the close of the taxable year". 26 U.S.C.A. § 117(a) (1).

and, that as such, were not capital assets. Further, it is urged that § 29.22 (c) (1) of Treasury Regulation 111 provides for inclusion as an inventory item

" * * * in case of raw materials and supplies only those which have been acquired for sale or which will physically become a part of merchandise intended for sale * * *"

that the evidence shows plaintiff acquires these warehouse receipts to assure it of an adequate stock in trade for its business making them proper inventory items.

Plaintiff taxpayer contends the purchase of these receipts was for investment purposes; that it was primarily a wholesale liquor dealer selling case and bottled goods to its customers; that it never contemplated bottling out said bulk whiskey and in any event the receipts were not held primarily for the purpose of bottling. The taxpayer urges that the evidence shows the Brown-Forman contract was entered into for the primary purpose of obtaining the supply of case goods covered by section 1 and that section 2 covering the bulk whiskey was entered into in order to obtain the benefit of section 1. In addition, plaintiff, through its president, states the reason no more than the amount shown was bottled was because it had a sufficient supply of bottled stock; that the bottling done was to give plaintiff's distiller customers a chance to get their label on the market and did increase the amount of bottled goods plaintiff had available for distribution. He also testified that he was aware of the fact that the receipts could be used by him to increase his supply of bottled goods at additional cost and gave plaintiff a backlog which could be converted into bottled stock; that when there was a sufficient supply of bottled goods procurable from the distillers the receipts were sold.

The evidence establishes that at the time taxpayer invested in Country Distillers stock it knew that by acquiring such an interest it would receive ware-

house receipts which could provide it with a supply of whiskey. The evidence also shows that there was an anticipated curtailment of whiskey production during the war and, in fact, during October 1942 manufacture of whiskey was stopped by the government. With respect to this situation, plaintiff's president testified that he was not fearful of getting a supply of bottled goods because plaintiff was a good established house and was reasonably sure to get some supply of bottled goods from distillers.

To finance the purchase in Country Distillers stock and warehouse receipts, the plaintiff needed to borrow money and the deposition of the bank officer to whom plaintiff made application is also a part of the record. It appears that the bank officer was of the opinion that plaintiff was making purchase of these receipts to assure himself of an adequate supply of whiskey. Analysis of the testimony of the bank officer indicates that he had no factual basis for such a conclusion. He stated that it was based on his experience in financing other similar transactions and on his knowledge of the conditions existing in the whiskey industry; that he did not know what the motive of plaintiff was in the purchase of the warehouse receipts, but "I know what I thought about it".

Clearly, the warehouse receipts represented a potential supply of whiskey which the plaintiff could convert into stock in trade which it could use in its business. Such a possibility, however, does not alter the intended purpose for which they were acquired. In Wood v. Commissioner, 1951, 16 T.C. 213 said:

"The issue here is whether a person buying and selling whiskey warehouse receipts for his own account is holding property primarily for sale to customers in the ordinary course of his trade or business. A whiskey warehouse receipt is prop-

erty as such term is used in section 117(a) of the Internal Revenue Code. Assuming, for the purposes of argument, that petitioner was engaged in the trade or business of selling and buying bottled whiskey, there is no reason why he could not engage in that business (the gain or loss resulting therefrom being treated as ordinary gain or loss) and also trade in whiskey warehouse receipts for his own account."

Thus, the fact that the warehouse receipts could be converted into stock in trade does not render inimicable their primary acquisition for investment purposes. From the record the court is of the opinion that taxpayer's course of conduct in converting an estimated 6% of its total holdings into bottled whiskey, and this only for distillers for which it was a franchised dealer, and holding the other 94% lends credence to plaintiff's expressed intention of purchasing these receipts as an investment.

Some discussion has been directed to the theory of abandonment, in that should the evidence show that taxpayer intended to acquire the receipts in order to use them to add bottled goods to its supply, such an intention was abandoned when the sale of the receipts took place. Cedar Valley Distillery, Inc., v. Commissioner, 1951, 16 T.C. 870 and Greenbros, Inc., v. Commissioner, 1954, 23 T.C. 226. In the view the court takes of the facts in this case, it is not necessary to consider and decide this contention.

The warehouse receipts in the instant case were capital assets held more than six months and the proceeds are subject to the capital gains tax. The plaintiff is entitled to recover the refund claimed.

The above and foregoing memorandum shall constitute the findings of fact and conclusions of law of the court. Counsel should present an appropriate Judgment Order for entry by the court.