The John B. Canepa Company v. Commissioner.
John B. Canepa Co. v. Commissioner
Docket No. 95340.
United States Tax Court
T.C. Memo 1963-337; 1963 Tax Ct. Memo LEXIS 12; 22 T.C.M. (CCH) 1770; T.C.M. (RIA) 63337; December 24, 1963
Jack B. Moore and Howard G. Krane for the petitioner. Charles B. Wolfe, Jr., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined a deficiency of $10,725 in the petitioner's income tax for the year 1957. The only issue is whether certain payments made in 1957 to the widow of *13 a deceased officer of the petitioner are deductible. Findings of Fact Some of the facts have been stipulated and are so found. The petitioner is an Illinois corporation having its principal place of business in Chicago, Illinois, and is engaged in the business of manufacturing and selling macaroni, spaghetti and related food products. It filed its income tax return for the calendar year 1957 on an accrual basis with the district director of internal revenue at Chicago, Illinois. James P. Canepa (hereinafter sometimes referred to as James) died on September 1, 1955. Edith King Canepa (hereinafter sometimes referred to as Edith), the wife of James, survived him. At the time of his death, James was vice president and secretary of petitioner and a member of its board of directors. He had been an officer of petitioner since 1923 and had been vice president and secretary at least since 1946. Petitioner's only other officer at the time of after sometimes referred to as John), a brother of James, who served as president and treasurer. James had been in full charge of petitioner's sales in the Chicago area and had personally contacted petitioner's Chicago customers. Petitioner's sales *14 in the Chicago market, which James had been responsible for developing, represented 35 to 40 percent of its total sales. On petitioner's income tax return for 1955, its total sales (less returns and allowances) were reported as $2,805,859.21. James also performed valuable services in public relations for petitioner and aided in the formulation of advertising and promotional programs. During the years 1946 through 1955 James received compensation from petitioner as follows: Year
Amount
1946
$17,000.00
1947
17,000.00
1948
18,149.94
1949
21,600.00
1950
22,391.65
1951
23,499.96
1952
23,500.00
1953
27,499.92
1954
27,500.00
1955
20,625.00 *
The board of directors of petitioner, then consisting of John V. Canepa, Albert J. Bono, Benjamin C. Ryden and J. Edward Long, held a meeting on October 4, 1955, minutes of the meeting recite the adoption of the following resolution: WHEREAS James P. Canepa, Vice President and Secretary of this Company for many years, died September 1, 1955, and the Company has thereby suffered a great loss, and WHEREAS this Board of Directors desired, in recognition of the services *15 rendered by Mr. Canepa, that an amount equal to Mr. Canepa's salary for two years shall be paid by this Company to his widow for a limited period after his death, RESOLVED that in recognition of the valuable services rendered to this Company by Mr. Canepa prior to his death this Board of Directors hereby authorized the payment by this Company to Mr. Canepa's widow, Edith King Canepa, of a sum equivalent to the total of two years' salary at the same rate which was being paid to Mr. Canepa at the date of his death, said sum to be paid in 24 monthly installments beginning as of October 1, 1955. Albert J. Bono was a half-brother to James and John. Benjamin C. Ryden and J. Edward Long were not related to James, Edith, John or Bono. In authorizing the payments to Edith, petitioner's directors considered the favorable effect which the making of such payments might have upon the morale and incentive of petitioner's executives and employees, and the resulting benefit to petitioner. Petitioner had no pension, profit-sharing or formal plan for providing retirement of death benefits for its employees, nor was it under any contractual obligation to make any payments to Edith upon her husband's *16 death. Pursuant to the authorization by petitioner's board of directors, petitioner made payments to Edith in 1955, 1956, and 1957 as follows: Year
Amount
1955
$ 6,875
1956
27,500
1957
20,625
Total
$55,000
Federal income tax, but no F.I.C.A. tax, was withheld from the payments made to Edith during 1955. No Federal taxes were withheld during 1956 and 1957. The payments were reported on a withholding tax statement, Form W-2, for 1955 and on information returns, Form 1099, for 1956 and 1957. The payments to Edith were charged to a salary expense account on petitioner's books and petitioner claimed deductions for the amounts so paid as salaries and wages on its income tax returns for 1955, 1956, and 1957. On September 1, 1955, the date of James' death, the outstanding capital stock of petitioner consisted of 4,586 shares of no par common stock, having a stated value of $100 per share on petitioner's books, held as follows: Number of
Shareholder
Shares
John V. Canepa
1,674
James P. Canepa
1,674
Albert J. Bono
414
Robert O'Brien
574
Alexander J. Moody, Executor of
the will of D. C. Gearon, De-
ceased
250
Total
4,586
Upon *17 the death of James, the 1,674 shares owned by him passed to Edith and John, as Executors of his will, and pursuant to the terms of the will were voted in accordance with John's directions. The 824 shares owned by Robert O'Brien and Alexander J. Moody, Executor, having a stated value of $82,400, were acquired by petitioner on April 6, 1956, and held thereafter as treasury stock. [1]
During the years 1951 through 1955, petitioner paid dividends on its outstanding stock at the annual rate of $6 per share. During 1956, it paid dividends at the rate of $1.50 per share prior to acquiring the 824 shares of stock on April 6, 1956, but paid no dividends for the remainder of that year. In 1957 it again paid dividends at the rate of $6 per share. Petitioner's net income after Federal income taxes for the years 1955, 1956, and 1957, as shown by its income tax returns for those years, was as follows: Net Income
Year
After Taxes
1955
$65,214.34
1956
76,319.06
1957
79,182.91
Edith performed no services for petitioner prior to the death of James. After his death, she served as a director commencing February 14, 1956, but performed no other services. *18 The respondent disallowed the deduction of $20,625 claimed for the payments to Edith in 1957, stating that such deduction "is unallowable under sections 162 and 404(a)(5) of the 1954 Internal Revenue Code." The payments made to Edith during the year 1957 were paid by petitioner as additional compensation for past services rendered by James and were reasonable in amount. Opinion The sole issue in this case involves the deductibility of payments in the amount of $20,625 made by petitioner to Edith King Canepa in 1957, the only year before us. If the payments in question constituted an ordinary and necessary business expense, within the meaning of section 162 [2] of the 1954 Code, they are deductible under section 404(a)(5) [3] in the year paid. See section 1.404(a)-12, Income Tax Regs.[4]
*19 Petitioner contends that the payments in question represented additional compensation for the past services of the deceased officer, James P. Canepa. Respondent contends that the payments were either a gift to the widow by petitioner, a distribution to her of corporate earnings, or some other type of expenditure not qualifying as an ordinary and necessary business expense. We have found that the payments to Edith were intended as additional compensation for past services rendered by James and were reasonable in amount. The facts show that James had been a key executive of petitioner and had been responsible for developing petitioner's sales in the Chicago market, which represented 35 to 40 percent of its total sales. He had also performed valuable services for petitioner in the public relations and promotional fields. We are convinced from the record that when the directors of petitioner authorized in effect the continuation of James' salary for a period of two years, they intended the payments to the widow to be additional compensation for the past services of James. Petitioner had no pension plan or other death benefits, and its directors did not wish the services rendered by *20 James over a period of approximately 32 years to go unrecognized upon his death. The record is clear that the payments would not have been made except in recognition of those services. In Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959), affirmed in part and reversed in part on other issues, 281 F. 2d 556 (C.A. 2, 1960), we found that payments to the widow of the petitioner's president were intended in part as additional compensation for the decedent's past services, in part to show gratitude for such past services, and in part to aid in the support of the widow. We held that the payments were ordinary and necessary business expenses to the petitioner. In our opinion the same rationale is applicable here. See also McLaughlin Gormley King Co., 11 T.C. 569 (1948); Philadelphia-Baltimore Stock Exchange, 19 T.C. 355 (1952). Supporting the conclusion that the payments to Edith constituted an ordinary and necessary business expense, the record also shows that petitioner's directors considered the favorable effect which the making of such payments might have upon the morale and incentive of petitioner's executives and employees, and *21 the resulting benefit to petitioner. Cf. Fifth Avenue Coach Lines, Inc., supra. This case is distinguishable from Barbourville Brick Co., 37 T.C. 7 (1961), in which we held that certain payments to the widow of a deceased corporate officer constituted a dividend. In Barbourville Brick Co., the stated purposes in making the payments were to give the widow "financial security" and to "maintain her standard of living." The widow, in one capacity or another held all but 12 of the 180 outstanding shares of the petitioner's stock, and there was no claim or showing that the payments were intended as additional compensation for past services. In the instant case, it is our opinion that the facts, taken as a whole, clearly indicate that the payments in question were made in recognition of the past services rendered by James. We hold that the payments in the amount of $20,625 made to Edith in 1957 constituted an ordinary and necessary business expense to petitioner. Decision will be entered for the petitioner. Footnotes
*. 9/12 of annual salary of $27,500.↩
1. [*] .↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; ↩
3. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other Plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. ↩
4. Section 1.404(a)-12 provides in part: Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period) and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a).↩