**KAISER v. GLENN, Collector of Internal Revenue (two cases).**

**CUMMINS v. GLENN, Collector of Internal Revenue.**

Civ. Nos. 2314, 2315, 2430.

United States District Court
W. D. Kentucky, at Louisville.

July 18, 1953.

Woodward, Hobson & Fulton, Louisville, Ky., for plaintiffs Ruth M. Kaiser and Edward F. Kaiser.

McElwain, Dinning, Clarke & Winstead, Louisville, Ky., for plaintiff Yancy Lee Cummins.

Charles S. Lyon, Acting Asst. Atty. Gen., Andrew D. Sharpe, Henry L. Spencer, Sp. Assts. to the Atty. Gen., David C. Walls, U. S. Atty., and Charles F. Wood, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

The three actions, above styled and numbered, were consolidated for trial and heard together.

They each involved a case against Seldon R. Glenn, former Collector of Internal Revenue in Kentucky, to recover income tax assessments made by the Commissioner of Internal Revenue, which assessments were paid by the plaintiffs and appropriate claims for refund refused by the Commissioner.

Each and all of the plaintiffs were members of a partnership trading and doing business under the firm name Kentucky Independent Distillations.

Plaintiff Ruth M. Kaiser seeks to recover $6,304.53; plaintiff Edward F. Kaiser seeks to recover $1,694.25 and plaintiff Yancy Lee Cummins seeks to recover $11,002.26. These items are exclusive of interest.

The cases were tried to the Court without a jury and upon the evidence heard, the Court makes the following—

Findings of Fact

1. For some years prior to March 5, 1947, Edward F. Kaiser, Ruth M. Kaiser, A. J. Cummins, Yancy Lee Cummins and D. A. Skaggs were associated as partners in the partnership named Kentucky Independent Distillations, engaged in the brokerage business, as expressed in the articles of partnership "in any and all commodities". The principal business however, was buying and selling case and bulk whiskies.

2. Under date of March 5, 1947, the individual partners and Kentucky Indiana Distillations, a Kentucky corporation, created just prior to March 5, 1947 entered into the following contract—

"This Agreement made and entered into by and between all of the parties of Kentucky Independent Distillations, to wit; Edward F. Kaiser, Ruth M. Kaiser, A. J. Cummins, Yancey Lee Cummins and D. A. Skaggs, (hereinafter called "partners"), and Kentucky Indiana Distillations, a Kentucky corporation with its home office in Louisville, Jefferson County, Kentucky, (hereinafter called "K.I.D."),

"Witnesseth:

"This agreement is an agreement of the partners between themselves and likewise an agreement with Kentucky Indiana Distillations, and the pertinent provisions thereof shall be binding upon each of the parties by each of the respective provisions thereof.

"The parties agree to sell and simultaneously with the delivery of this contract, deliver to K.I.D. all of their interest in the partnership, Kentucky Independent Distillations, as is hereinafter set out, for the sum of One Hundred and Fifty-Two Thousand Dollars ($152,000.00), payable in cash upon such delivery of the respective partners' interests. Said delivery is to be made on or before March 8, 1947. Said partners' interests shall include the following:

"(1) One thousand five hundred sixty-three (1563) new white oak bourbon whiskey barrels, produced by Blue Grass Cooperage Company and in storage at Louisville, Kentucky.

"(2) Pre-paid insurance as of February 28, 1947

"(3) All of the furniture and general office equipment, supplies, books, records, accounts, customers' files and statements of the partnership, Kentucky Independent Distillations. It is, however, agreed that said partnership records shall be available to any of the partners at any time for examination of any such partner or his duly authorized agent.

"(4) A lease with the Kentucky Home Mutual Life Insurance Company for office space at 1517–21 Kentucky Home Life Building, for a three year period from November 1, 1945, which said lease shall be assumed by K.I.D. and the partners released from liability in connection therewith.

"(5) The whiskey blend label 'K.I.D.' and the gin label 'K.I.D.' Neither label has Federal registration and the partners make no guarantees in connection therewith.

"(6) Any barrels, new and used, and drums stored at Frantz Distillers, Berlin, Pennsylvania.

"(7) Warehouse receipts for the bulk whiskies as shown by schedule attached, marked 'Exhibit A'.

"It is the purpose and intention of this contract that K.I.D. shall purchase all of the physical assets, contracts, leases and choses in action of the partners in Kentucky Independent Distillations, together with the books, records, accounts and office supplies, and in general, all of the assets of said partnership, unless same are expressly excluded from this agreement. The assets excluded are:

"(a) The earnings of the partnership up to and including February 28, 1947.

"(b) A contract with Frantz Distillers, Inc., whose office is at Pittsburgh, Pennsylvania, for 200 barrels of Bourbon or Rye whiskey per month. Said contract was dated the 27th day of July 1945, and expires January 1, 1948, regardless if the full amount of barrels were not produced due to restrictions. There is a $3,000.-00 deposit paid on same.

"(c) A contract with Barton Distilling Company of Bardstown, Kentucky, dated July 10, 1944, for 50 barrels per month for a total of 1,800 barrels, of which 232 barrels have been received to date.

"It is now agreed between the parties hereto as follows:

"No business has been transacted by Kentucky Independent Distillations since February 28, 1947, and the partners agree that said partnership shall be forthwith liquidated and dissolved according to the terms of the partnership agreement and said liquidation when completed shall be considered effective as of February 28, 1947.

"The partners further agree that said liquidation will be effected at the earliest possible date and that distribution of the funds of the partnership shall be made in accordance with the respective partners' interests as shown by the partnership agreement.

"Payment of the sum of $152,000.00 shall be made by K.I.D. on the following basis:

"To Edward F. Kaiser—6%; to Ruth M. Kaiser—20%; to A. J. Cummins—7%; to Yancy Lee Cummins—30%; to D. A. Skaggs—37%.

"In Testimony Whereof, witness the signature of the parties hereto in person, or by their officer or agent duly authorized in the premises, this March 5th, 1947."

3. The plaintiffs, Edward F. and Ruth M. Kaiser were stockholders in the newly formed corporation and Edward F. Kaiser had been the managing partner of the partnership and became the president and directing head of the corporation. None of the other partners, except Edward F. and Ruth M. Kaiser became stockholders in

the corporation, Kentucky Indiana Distillations.

4. The contract of March 5, 1947, it will be noted, agrees on the part of the individual partners to sell and deliver "all of their interest in the partnership—Kentucky Independent Distillations—as is hereinafter set out, for the sum of $152,000.00". Then there follows a list of the property sold as—

1. 1563 new white oak bourbon whiskey barrels.

2. Prepaid insurance as of February 28, 1947.

3. All of the furniture, office equipment, supplies, books, records of accounts, etc.

4. A lease of the office space occupied by the partnership in the Kentucky Home Life Building, in Louisville.

5. Whiskey and gin labels.

6. Certain barrels, new and used and drums stored at Frantz Distillers, Berlin, Pennsylvania.

7. Warehouse receipts for the bulk whiskies, as shown by an attached schedule.

The attached schedule listed 659 barrels of whiskey.

The contract excluded from the sale—

1. Partnership earnings up to February 28, 1947.

2. The contract with Frantz Distillers, Inc. for 200 barrels of bourbon or rye whiskey per month.

3. Contract with Barton Distilling Company of Bardstown, Kentucky, for 50 barrels per month for a total of 1,800 barrels, of which 232 barrels had been received prior to the date of the contract. ·

Consideration for the sale was $152,000, which the contract provided should be paid to the individual partners as follows—

| | |
|---|---|
| Edward F. Kaiser | 6% |
| Ruth M. Kaiser | 20% |
| Y. Lee Cummins | 30% |
| D. A. Skaggs | 37% |
| A. J. Cummins | 7% |

5. The corporation took over the partnerships' three employees, moved into the office space previously occupied by the partnership and within a few days sold the whiskey and cooperage it had acquired from the partnership.

6. The corporation refused to buy from the partnership the contracts it had with the Frantz Distillers, Inc., and Barton Distilling Company, because these contracts were regarded both by the individual partners and by the corporation as liabilities and ultimately proved to be liabilities.

7. Within two days after the sales agreement was executed, the corporation sold the exact amount of whiskey it had bought from the partnership to Sydney B. Fleischman, a corporation of Boston, Massachusetts, for $117,942.16, and a week later sold the cooperage it had acquired from the partnership to Seagram & Sons for $41,229.60, thereby receiving a profit on the amount it had paid the partnership for the whiskey and cooperage of $12,179.-40, none of which profit was shared by any of the partners save Mr. and Mrs. Kaiser, as stockholders in the newly formed corporation.

8. Following the transfer of the property referred to in the contract of sale, the partnership negotiated releases of its contracts with Frantz Distillers, Inc., and Barton Distilling Company, which were fully liquidated on September 3, 1947.

9. Of the sum of $152,000 paid by the corporation to the partners, $82,662.62 was profit. No separate value was placed on good will, trade names or labels and nothing paid by the corporation for such. The $152,-000 was paid in the following amounts—

| | |
|---|---|
| Edward F. Kaiser | $9,120 |
| Ruth M. Kaiser | 30,400 |
| D. A. Skaggs | 56,240 |
| Yancy Lee Cummins | 45,600 |
| A. J. Cummins | 10,640 |
| | $152,000 |

10. The partners all returned their respective shares in the sale for income tax purposes as long-term capital gains. The Commissioner, in assessing the additional taxes herein involved, regarded and treated the income of the partners as ordinary income.

## Conclusions of Law

I. This Court has jurisdiction of the parties and of the subject matter.

II. The sole question is one of law and is whether the income derived by the plaintiffs as members of the partnership is from a sale of the partnership interests in the partnership, or whether from a sale of the partnership stock in trade to the corporation.

█ The law is well settled that a partnership interest in a going concern is a capital asset. Commissioner of Internal Revenue v. Shapiro, 6 Cir., 125 F.2d 532, 144 A.L.R. 349; Thornley v. Commissioner of Internal Revenue, 3 Cir., 147 F.2d 416; Commissioner of Internal Revenue v. Lehman, 2 Cir., 165 F.2d 383, 7 A.L.R.2d 667; Commissioner of Internal Revenue v. Smith, 5 Cir., 173 F.2d 470; and Hatch's Estate v. Commissioner of Internal Revenue, 9 Cir., 198 F.2d 26.

██ Only fifty percent of the gain or profit on the sale of a capital asset held more than six months is taxable as income. Internal Revenue Code § 117(b), 26 U.S.C. A. The entire gain or profit is taxable on a sale of stock in trade or on property held primarily by a taxpayer for sale in the ordinary course of business. Internal Revenue Code, Section 22(a), 26 U.S.C.A.

The partnership interests here involved were each held by the partners for more than six months.

If therefore, the proper conclusion in this case is that there was a sale of the partnership interests, the plaintiffs are entitled to recover, but if on the other hand, there was a sale of stock in trade, the Commissioner's assessment was proper and plaintiffs should not be granted a recovery.

III. There can be no question but that plaintiffs intended to transact the sale in such way as to transfer their partnership interests. They each were represented by competent legal counsel, who desired that the sale be made in such way as to give the individual partners the benefit of the lesser tax assessable upon income derived from the sale of a long-term capital asset.

This Court, however, is not of the opinion that there is such ambiguity in the contract here involved as would make competent evidence of the purpose and intention of the contract or the parties as was permitted in the case of Hatch's Estate v. Commissioner of Internal Revenue.

IV. The contract in this case provides for sale "of all of their (partners) interest in the partnership * * * as is hereinafter set out". Then there follows an enumeration of property included in the sale and then there follows a list of assets excluded. The exclusion consisted of cash in the sum of approximately $35,000 and there was no intention that this cash be included in the sale. Hatch's Estate v. Commissioner of Internal Revenue, supra; United States v. Jones, 10 Cir., 194 F.2d 783. But if the retention by the partners of the two contracts—the one with Frantz Distillers and the other with Barton Distilling Company, with the original partners left as a partnership to negotiate settlements or fulfillment of these contracts and later dissolve the partnership, the Court cannot conclude, regardless of the expressed intention of the partners to the contrary, that the sale represented all of the interests of the partners, such as is contemplated by the Statute in its distinction between taxation upon a long-term capital gain and ordinary income.

It will be noted that the partnership continued in existence for six months and as such procured a release and discharge of the partnership and the individual partners from the two contracts in question.

In the Hatch case, supra, the Court said [198 F.2d 30]—

"That it was the business as a whole and not the individual assets which were sold is further indicated by the fact that the measure of the portion of the total sales price which was assigned to the inventory under the Agreement of Sale was the cost of said inventory items. But the total sales price was more than the cost of the physical assets sold. Therefore, no gain was realized from the transfer of the inventory."

Such is not here the case. Prior to the sale, cooperage was carried on the books of the partnership as $24,173.35 and the

bulk whiskey $39,509.21 and the same items appeared immediately after the sale on the books of the corporation as cooperage $31,-260 and bulk whiskey $115,732.36. The gain on the sale—$82,662.62 is exactly the amount (after deducting $647.18, adjustment in prepaid insurance) by which the value of the cooperage and whiskey on the corporation books exceeded the value of the same cooperage and whiskey on the partnership books.

V. The retention by the partnership of the Frantz and Barton contracts forced the partnership to continue to act as a unit. As said in the Hatch opinion—

" * * * we must consider the form and steps used in their relation to the intended and accomplished entire transaction."

VI. This Court concludes that the sale in question was actually a sale of assets and not a sale of the partnership interests.

VII. It follows therefore, that the Commissioner correctly assessed the tax deficiencies and that judgment must be entered for the defendant.