W. Ferd Dahlen, et al.,[1] Petitioners, v. Commissioner of Internal Revenue, Respondent.

Docket Nos. 44834–44837, 44857.    Filed April 29, 1955.

*Gilbert Weiss, Esq.*, for the petitioners.
*Marvin E. Hagen, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith : James H. Forbes, Docket No. 44835 ; Myles P. Dyer, Docket No. 44836 ; Estate of Robert E. Hannegan, Deceased, Irma P. Hannegan and Mercantile Trust Company, Executors, Docket No. 44837 ; and Walter H. S. Wolfner, Docket No. 44857.

162

164

OPINION.

JOHNSON, *Judge:* The difference between the parties under the issue is whether there were sales of partnership interests taxable as capital gain,. as reported by the petitioners, or sales of assets of the business, taxable as ordinary income, as determined by the respondent.[2]

Respondent first asserts that the agreement of sale was in the form of a sale of assets. We do not so view it.

The contract of sale provided for a specified amount in payment of the "coffee and tea manufacturing business" of the partners, consisting, in general, of all of its tangible and intangible assets, including accounts receivable, deferred charges, and books and records, and excluding cash on hand. As part of the transaction the parties agreed to refrain from engaging or becoming interested in any capacity in the business of manufacturing soluble coffee for a period of 10 years. All operations of the business from the close of business on October 31, 1945, to the date of execution of the contract on November 2, 1945, were to be for the account of the buyer.

[2] Respondent taxed the gain realized on the sale of machinery and equipment as long-term capital gain. He concedes that the sale of a partnership interest constitutes a sale of a capital asset. G. C. M. 26379, 1950–1 C. B. 58.

The broad terms of the contract of sale disclose a purpose of the buyer to acquire and of the seller to sell a going business without interruption of activities. The buyer took possession of the plant as of the close of business on October 31, 1945, and at all times important thereafter operated it for its own account, for a short period in the trade name of the partnership, and used the import license for obtaining quanities of raw coffee for future production requirements.

That the parties to the transaction intended to transfer the entire enterprise, instead of merely the physical assets, is clearly shown by testimony. The sale was negotiated by Wolfner, who testified that the negotiations were initiated by the buyer with the idea of acquiring the "business" and that it bought the partnership "lock, stock and barrel," and the secretary of Baker testified that a "going business" was acquired. Such testimony is consistent with the terms of the contract of sale, and the acts and conduct of the parties with reference thereto.

In support of his position respondent contends (a) that the import license was not transferred to Baker, and (b) that there was a continuation of the partnership business for 2 years after the sale to Baker.

We think there is no merit in either of these contentions.

The contract of sale, in (e) of paragraph First, wherein is transferred the goodwill, etc., of the business to Baker, also specifically transferred "all * * * franchises, * * * licenses, * * * owned by the Sellers or used in their said business."

Considering the importance and indispensability of the import license in the future operations of the buyer, it would be unreasonable to construe the unqualified terms above quoted as not intended to include such license.

Furthermore, from the evidence we have found as a fact that after the sale Baker did use the import license for obtaining the importation of raw coffee for its production requirements.

So both by the terms of the contract and the acts of the parties with reference thereto, we must conclude that the import license was transferred to the buyer.

We think the record as a whole refutes the suggestion that the partnership continued in active business after the sale to Baker. Under the terms of the sale they were precluded from so doing, and we think the evidence conclusively shows that the partnership, concurrently with the transfer, did discontinue its going business activities, and all transactions thereafter were in liquidation.

We attach no importance to the fact that for the 2 years immediately succeeding the sale the partnership filed income tax returns, in the first of which they reported total gross income in the amount

of $1,750, and in the second of which no taxable income was reported. The business in which the partnership had been engaged was of such magnitude it would naturally require some time in making financial transactions of settlement. According to the partnership income tax return for the year ended November 30, 1945, its total sales were approximately $1,967,000, and its gross profits $262,678.

Total income of less than one-tenth of 1 per cent of its sales for the previous year, and no income for the second year indicates a cessation rather than a continuation of the partnership business.

The fact that after the sale to Baker it agreed to let Dahlen import coffee under the import license in excess of its needs and Dahlen divided the profits from this business with Wolfner is of no significance. This was a separate business in which the original partners had no interest. The erroneous book entry is of no consequence and must give way to the actual facts.

Neither do we regard as significant the fact that cash was not involved as an asset in the sale or that liabilities were not assumed. Obviously, delivery of the cash on hand would have amounted to no more than an exchange of dollars and the absence of an agreement to assume liabilities in no sense negatives a purchase or sale.

*Estate of Herbert B. Hatch*, 14 T. C. 251,[3] is distinguishable. There the exclusions from the sale included the franchise the seller had been operating under and also the partnership name. Here the license to import coffee was transferred by the sale and Baker acquired the trade name and any goodwill the partnership might have had; here nothing was reserved.

In *Kaiser* v. *Glenn*, (C. A. 6, 1954) 216 F. 2d 551,[4] involving the same issue here presented, the court said:

In applying tax statutes, matters of substance are of first importance. In this case, the partners intended a sale of their partnership interests and their retention of the two contracts which could not be sold because the purchasing corporation would not accept them did not result in a continuation of the partnership business even though the partnership was not terminated until the partners' liability under the contracts was liquidated. The sale was not of partnership assets but of the partnership business as a going concern.

We think the evidence here is opposed to the determination of respondent that the sale was merely of assets of a business, and find that the facts establish sales of partnership interests giving rise to capital gain, as contended by petitioners, and we accordingly so hold.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

[3] Reversed on appeal, 198 F. 2d 26.
[4] Reversing 114 F. Supp. 356.