JOHN F. AND RUTH BAYLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64616. Filed November 18, 1960.

*J. Gilmer Blackburn, Esq.*, for the petitioners.
*Harold G. Clark, Jr., Esq.*, for the respondent.

PIERCE, *Judge:* The respondent determined a deficiency in petitioners' income taxes for the calendar year 1954 in the amount of $1,266.90. The issues for decision are:

1. Was the petitioners' son a "full-time student at an educational institution" during each of 5 calendar months in the year 1954, within the meaning of section 151(e) of the Internal Revenue Code of 1954, so as to entitle petitioners to a dependency deduction with respect to such son for said year?

2. Was a new home, constructed by the petitioners during 1955, used by them as their principal residence within a period of 18 months beginning with the sale of their old residence, so as to entitle petitioners to the benefit of the nonrecognition of gain provisions (section 1034 of the 1954 Code) with respect to the gain realized on the sale of their old residence?

3. If issue 2 is decided adversely to petitioners, are they entitled to have the gain on the sale of their old residence computed on the installment method provided in section 453 of the 1954 Code?

4. If issue 2 is decided favorably to petitioners, are they entitled to have certain taxes which were treated by respondent as one of the expenses of sale of their old residence, separately allowed as a deduction for taxes paid, under section 164(d) of the 1954 Code?

Respondent conceded the only other issue raised by the pleadings, which pertained to a deduction of $22.95 for business expenses.

FINDINGS OF FACT.

Some of the facts were stipulated. The stipulation of facts is incorporated herein by reference.

Petitioners John F. and Ruth Bayley are husband and wife, residing in Decatur, Alabama. They filed a timely joint income tax return for the taxable year 1954 with the district director of internal revenue at Birmingham, Alabama.

Petitioners had a son, John F. Bayley, Jr., who was more than 19 years of age during the taxable year, and who had gross income in said year in the amount of $700. John, Jr., attended the medical school of the University of Tennessee during the 4-month period of January through April 1954. At the end of such period, he was awarded a degree of doctor of medicine.

From July 1, 1954, to July 1, 1955, John, Jr., was an intern at Jackson Memorial Hospital in Miami, Florida. Since October 1954, Jackson Memorial Hospital has been the teaching hospital of the University of Miami School of Medicine, and the faculty of said school has been responsible for the training of the interns. The University of Miami School of Medicine has an organized faculty and student body. The interns were appointed by and employed by the hospital.

While John, Jr., was serving as an intern at the Jackson Memorial Hospital, he was furnished his room and board, and was paid $75 per month by the hospital. The parties have stipulated that the petitioner John Bayley provided more than one-half of John, Jr.'s support for the taxable year 1954 here involved.

Upon the completion of his internship, John, Jr., received a certificate evidencing that fact. Such certificate was jointly signed by the dean of the School of Medicine and the executive director of the hospital.

On the joint return filed by the petitioner for the taxable year 1954, a dependency deduction was claimed with respect to John, Jr. Respondent, in his notice of deficiency, determined that no such deduction was allowable, on the ground that John, Jr., was not a full-time student during each of 5 months of said year at an educational institution, within the meaning of section 151(e)(4) of the 1954 Code.

Petitioner John Bayley was employed in Memphis, Tennessee, in the early part of the year 1954, and was thereafter transferred by his employer to Decatur, Alabama. On April 15, 1954, petitioners sold their personal residence in Memphis (hereinafter referred to as the old residence) for $30,000. Of this amount about $8,000 was paid in cash at the time of the sale; and the balance was payable in amounts of $1,000 per year thereafter, with interest at 5 per cent per annum. Following such sale, the petitioners moved to Decatur; and, upon their arrival, they rented and lived in a house on Memorial Drive in that city.

Sometime during March 1955, petitioners entered into a construction agreement with a building contractor for the latter to erect a personal residence for them at 1602 Chenault Drive in Decatur (hereinafter referred to as the new residence); and construction thereon was commenced prior to April 15, 1955. Although the new residence was scheduled to be completed in September 1955, the contractor did not have the house completed either by that time or by October 15, 1955. On the last-mentioned date, petitioners had expended more than $30,000 on the construction of the new residence.

The statutory 18-month period within which it was necessary for petitioners to use the new house as their principal residence in order to qualify for nonrecognition of the gain on the sale of their old residence, expired on October 15, 1955. On October 3, 1955, petitioner John Bayley wrote a letter to the district director of internal revenue at Birmingham, requesting an extension of said statutory period. The letter was referred to the internal revenue agent in charge at Decatur, who thereupon informed petitioner John Bayley

that there was no way to grant such an extension; and he suggested that petitioners move into the new residence if it were possible to do so.

On October 14, 1955, petitioners moved some of their furniture into an upstairs room of the new residence, which had just been walled off. At that time, and also on the next day, October 15, the new residence had no water or sewerage connections. There were no appliances connected in the kitchen. The only electric lights which had then been installed, were in the above-mentioned upstairs room; and such room was the only part of the house where the hardwood flooring had been put in. The interior was only partially completed.

On October 15, 1955, petitioners were still living in the above-mentioned rented house on Memorial Drive. All of their furniture, with the exception of that which had been moved into the room of the new residence, remained in said rented house until November 15, 1955, at which time petitioners surrendered possession of such rented house and moved the rest of their furniture into the new residence. After November 15, 1955, petitioners stayed at the homes of various friends until December 28, 1955, when they began to live at the new residence.

On their joint income tax return for 1954, the petitioners reported a gain on the sale of the old residence, in the amount of $6,979.66, which gain was explained in an accompanying computation, to which the petitioners appended the following statement:

Taxpayer elects postponement of gain under Code section 1034, as construction of new residence in Decatur, Alabama is expected to begin before April 15, 1955.

Respondent, in his notice of deficiency, determined that petitioners' gain on the sale of the old residence was $8,639.66, which adjustment is not here disputed; and he further determined that no part of such gain qualified for nonrecognition under section 1034 of the 1954 Code.

On December 5, 1957, petitioners requested and received permission of this Court to amend their petition, in the following respect:

VII. The Petitioners respectfully plead in the alternative that, if their contention is denied by The Honorable Court, the gain recognized on the sale of their residence will be reported on the installment basis, as provided by Revenue Ruling 56–396 I.R.B. 1956–33, 8 [1956–2 C.B. 298].

OPINION.

1. Under the first issue, we must decide whether petitioners' son, John, Jr., was a "full-time student at an educational institution" during each of 5 calendar months of 1954, within the meaning of section

151(e) of the 1954 Code.[1]  There is no question that for the 4-month period of January through April of 1954, when John, Jr., was completing the work for his M.D. degree at the University of Tennessee medical school, he was a student at an educational institution within the meaning of the statute.  Our question is thus narrowed to this: When John, Jr., thereafter became an intern at the Jackson Memorial Hospital, was he then also a full-time student at an educational institution within the meaning of the statute?  If he was, it is clear that petitioners were entitled to a dependency deduction for him, all other requirements having been met.

No decided case under section 151(e) has been cited to us by counsel, nor has our own research revealed any such case.  In S. Rept. No. 1622, 83d Cong., 2d Sess., the report of the Senate Finance Committee which accompanied the bill that became the Internal Revenue Code of 1954, the committee stated with respect to the provisions that became section 151(e) of the Code (pp. 20, 193) :

An "educational institution" is one which normally maintains a regular faculty and curriculum and normally has a regularly organized body of students in attendance at the place where its educational activities are carried on.  *This excludes* correspondence schools, *employee training courses*, and similar institutions and programs.

### (2) *Changes made by committee*

For the purposes of determining whether or not an individual is a student and therefore may earn over $600 and still qualify as a dependent, your committee has made a change in the House bill.  As an alternative to qualifying as a full-time student at an educational institution an individual is considered as a student under your committee's bill if he is pursuing a full-time course of institutional *on-farm training* under the supervision of an educational institution or State or local governmental unit.  Your committee believes that those obtaining practical training in the running of a *farm* are equally deserving of the tax benefit provided here with those attending regular educational institutions.

\*       \*       \*       \*       \*       \*       \*

---

[1] SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.
  (e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—
    (1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—
      (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or
      (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.
      \*       \*       \*       \*       \*       \*       \*
    (4) STUDENT AND EDUCATIONAL INSTITUTION DEFINED.—For purposes of paragraph (1)(B)(ii), the term "student" means an individual who during each of 5 calendar months during the calendar year in which the taxable year of the taxpayer begins—
      (A) is a full-time student at an educational institution ; or
      (B) is pursuing a full-time course of institutional on-farm training under the supervision of an accredited agent of an educational institution or of a State or political subdivision of a State.
  For purposes of this paragraph, the term "educational institution" means only an educational institution which normally maintains a regular faculty and curriculum and normally has a regularly organized body of students in attendance at the place where its educational activities are carried on.

The student at an educational institution must be a full-time student; that is, *he must be enrolled for the number of hours or courses* which is considered to be full-time attendance for some part of 5 calendar months. * * *

The term "educational institution" means * * * primary and secondary schools, preparatory schools, colleges, universities, normal schools, technical and mechanical schools and the like, but *does not include* noneducational institutions, correspondence schools, *on the job training,* night schools and the like. [Emphasis supplied.]

The Treasury Department regulations interpretative of section 151 (e), Income Tax Regulations, section 1.151–3 (b) and (c), define "student" and "educational institution" in terms practically identical with those appearing in the above-quoted portions of Senate Report No. 1622.

Applying here the foregoing definitions and principles, it is our opinion that the evidence presented with respect to the issue before us (which consists solely of certain stipulated facts) does not establish, either that the Jackson Memorial Hospital was an "educational institution," or that John, Jr., while working as an intern in said hospital was a full-time "student at an educational institution," within the meaning of the controlling statute. It has been stipulated that the interns at said hospital were appointed by and employed by the hospital; that John, Jr., after obtaining his degree of doctor of medicine at the University of Tennessee, became an intern at said hospital on July 1, 1954; and that the hospital paid him $75 per month and furnished his board and room. In October 1954, which was about 3 months after John, Jr., was so employed, the hospital became the teaching hospital of the University of Miami School of Medicine, and the faculty of said university thereupon became responsible for the "training" of the interns. But there is no evidence as to what effect, if any, this new arrangement had on the duties or services incident to John, Jr.'s employment; and there is no evidence that the hospital, either before or after such new arrangement, "normally maintain[ed] a regular faculty and curriculum"; or "normally * * * [had] a regularly organized body of students in attendance"; or that it carried on "educational activities" for any such regularly organized body of students. Also there is no evidence that, at any time during the taxable year involved, John, Jr., was "enrolled for * * * [any] number of hours or courses which * * * [were] considered to be full-time attendance" at an educational institution; or that he attended any classes, or was a candidate for any academic degree.

Webster's New International Dictionary, Second Edition, defines the term "intern" as follows:

1. *Med.* A resident physician, surgeon, or similar officer in a hospital; specif., one who upon completion of the required course of study serves in a hospital in preparation for independent practice.

In the absence of any evidence to the contrary, it may reasonably be assumed that the parties to this case, in stipulating that John, Jr., was employed during the last half of the taxable year as an "intern," intended that such term should be given its commonly accepted meaning, as above set forth.

The above-mentioned regulations and committee report indicate clearly that, with one exception, "on the job training" does not in itself qualify the trainee as "a full-time student at an educational institution." Said exception, which is specifically provided for in paragraph (4) (B) of section 151(e), is shown by the above-mentioned committee report to have been included in the House bill by the Senate Finance Committee, with the following explanation:

*As an alternative* to qualifying as a full-time student at an educational institution an individual *is considered* as a student under your committee's bill if he is pursuing a full-time course of *institutional on-farm training* under the supervision of an educational institution or State or local governmental unit. Your committee believes that those obtaining *practical training* in the running of a *farm* are equally deserving of the tax benefit provided here with those attending regular educational institutions. [Emphasis supplied.]

Such exception is not applicable in the instant case. We believe that if Congress had intended to extend the benefits of the statute to other types of on-the-job training, it would have specifically so provided.

We hold that petitioners' son was not a "full-time student at an educational institution" during 5 calendar months of 1954, within the meaning of section 151(e) of the 1954 Code. We approve the respondent's denial of the dependency deduction claimed by petitioners with respect to said son.

2. The second issue concerns the question of whether petitioners were entitled to the nonrecognition of gain on the sale in 1954 of their old residence. The pertinent statute is section 1034 of the 1954 Code. The relevant portions of this section, and of the Treasury regulations promulgated thereunder, are set out in the margin.[2]

---

[2] I.R.C. 1954:

SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) RULES FOR APPLICATION OF SECTION.—For purposes of this section:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of one year after the date of the sale of the old residence, the period specified in subsection (a) \* \* \* shall be treated as including a period of 18 months beginning with the date of the sale of the old residence.

Income Tax Regs.

Sec. 1.1034–1 SALE OR EXCHANGE OF RESIDENCE.—(a) *Nonrecognition of gain; general*

Petitioners sold their old residence on April 15, 1954, and realized a gain thereon. Prior to April 15, 1955, they commenced construction of a new residence. By October 15, 1955 (18 months after the sale of the old residence), petitioners had expended on the new residence an amount of money in excess of the adjusted sales price of the old residence; but on the last-mentioned date the construction of the new residence was not completed. On October 14, 1955, the petitioners put some furniture in an upstairs room which had been walled off; but they did not begin to live in the new residence until more than 2 months thereafter, in late December of 1955. The instant case thus presents a narrow question: Was the new residence "used by the taxpayer[s] as * * * [their] principal residence," within the meaning of section 1034(a) of the 1954 Code, on or before October 15, 1955? All other requirements for nonrecognition of the gain realized on the sale of the old residence have been met.

We believe that the "use" of the new residence, as contemplated by Congress in the enactment of section 1034, is physical occupancy, i.e., that the owners must live therein. In the committee reports of the House Ways and Means Committee and of the Senate Finance Committee, which accompanied the bills that became the 1954 Code, each of the named committees stated in identical language, with respect to the nonrecognition of gain on the sale of a personal residence:

To qualify under this provision the taxpayer must purchase *and occupy* another residence within 1 year of the date of the sale, unless he builds a new residence, in which event the period is 18 months.

* * * * * * *

This section is derived from section 112(n) of existing law [Internal Revenue Code of 1939], which provides for nonrecognition of gain where a taxpayer sells his principal residence and purchases *and occupies* another within one year. * * * [H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), p. 79, A268; S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 109, 427. Emphasis supplied.]

---

*statement.*—Section 1034 provides rules for the nonrecognition of gain in certain cases where a taxpayer sells one residence after December 31, 1953, and buys or builds, and uses as his principal residence another residence within specified time limits before or after such sale. * * *

* * * * * * *

(c) *Rules for application of section 1034.*—(1) *General rule; limitations on applicability.*—Gain realized from the sale * * * of an old residence will [generally not] be recognized * * * provided that the taxpayer * * * within a period beginning one year before the date of such sale and ending 18 months after such date uses as his principal residence a new residence the construction of which was commenced by him at any time before the expiration of one year after the date of the sale of the old residence * * *.

* * * * * * *

(3) *Property used by the taxpayer as his principal residence.*—(i) Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), depends upon all the facts and circumstances in each case, including the good faith of the taxpayer. The mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence. * * *

As pointed out in the above-quoted committee reports, the predecessor of section 1034 was section 112(n) of the 1939 Code. Such predecessor was enacted as section 303 of the Revenue Act of 1951. Speaking concerning the provisions which became section 303, the Senate Finance Committee made it clear that physical occupancy of a new residence would be essential, for it said, in part:

However, in the case of new construction the *requirement of occupancy within 1 year* appears to your committee not to be realistic, particularly during the present period of material and labor shortages. Therefore, your committee's bill provides that in the case of the construction of a new house, if the construction of the house begins within a year before or after the sale of the first house, and the new house is used as the taxpayer's principal residence within 18 months after the sale of the first house, then all expenditures on the new residence within this 18-month period are to be considered as a reinvestment of the selling price of the first residence. [S. Rept. No. 781, 82d Cong., 1st Sess. (1951), reprinted in 1951–2 C.B. 458, 483. Emphasis supplied.]

As further indication of the requirement of physical occupancy of the new residence, the Joint Committee Staff Summary of Provisions of the Revenue Act of 1951, reprinted in 1951–2 C.B. 287, 309, contains the following statement:

The taxpayer is not required to have actually been occupying his old residence on the date of its sale. Relief is to be available even though the taxpayer *moved into his new residence* and rented the old one temporarily before its sale. Similarly, he may obtain relief even though he rents out his new residence temporarily before *occupying it, if he occupies it* within * * * 18 months * * * after the sale of his former residence. [Emphasis supplied.]

The facts of the instant case do not, in our opinion, establish that the petitioners physically occupied or lived in the new residence on or before October 15, 1955, the date when the statutory 18-month period expired. Indeed the rather extensive state of incompletion of the new residence—no water or sewerage connections, no appliances in the kitchen, and lights and flooring only in minimal quantities—effectively prevented petitioners from living in the new residence until long after October 15, 1955. Petitioner John Bayley conceded on cross-examination that they did not sleep in the new residence until December 28, 1955. Actually, from October 15 to November 15, petitioners continued to live in the house which they had been renting; and from November 15 until December 28, they made their home with various friends. In such circumstances, we feel impelled to hold that within the specified 18-month period, the new residence was not used by the petitioners as their principal residence, within the meaning of the statute.

It is true that in the case of *Ralph L. Trisko*, 29 T.C. 515, this Court held that the taxpayer was not required to physically occupy his *old* residence at the time of the sale thereof. The Court pointed to language in the committee reports and in the Treasury regulations which

indicated that physical occupancy of the old residence at the time of sale was not an indispensable requirement. The Court took care to point out, however, that its decision was "limited strictly to the facts here present." In the instant case, we are dealing with a *new* residence; and as we read the statute and the regulations in the light of the Congressional committee reports above quoted, a new residence must be lived in or physically occupied, on or prior to the post-sale deadline date.

We fully recognize the equity of the petitioners' position on this issue, for they undoubtedly intended and diligently attempted to meet the statutory requirements for nonrecognition of the gain from the sale of their old residence. But Congress, for reasons satisfactory to it, has established a fixed 18-month period within which such requirements must be met; and we feel impelled to conclude that petitioners did not meet these requirements within that fixed period. We decide this issue for respondent. It therefore becomes unnecessary for us to consider or decide alternative issue 4.

3. Finally, we consider the issue of whether petitioners are entitled to have the gain realized on the sale of their old residence computed on the installment basis provided in section 453(b) of the 1954 Code. Such issue will turn on the question of whether the petitioners' election or request to have the gain computed on such basis was timely made.

Section 453 of the 1954 Code, which is here involved, provides in material part as follows:

SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

(1) General Rule.—Income from—

(A) a sale or other disposition of real property, * * *

\* \* \* \* \* \* \*

*may* (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a). [Emphasis supplied.]

Income Tax Regulations promulgated under section 453 were not adopted until September 1958 (more than 4 years after the sale of petitioners' old residence). However, section 7807 of the 1954 Code had the effect of keeping in force the Treasury regulations promulgated under the cognate section of the 1939 Code, section 44, until regulations under the 1954 Code were adopted. Section 39.44–3 of Regulations 118, promulgated under the 1939 Code, provided in material part, as follows:

Sec. 39.44-3 *Sale of real property on installment plan.* * * * the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price.

It is to be observed that neither the statute nor the regulations in force and effect at the time when Federal income tax returns for the calendar year 1954 were due to be filed, specifically required that a taxpayer must make his election *on his return* in order to have the benefit of the installment method for computing the gain on a sale which qualified as an installment sale.

In the instant case, petitioners did disclose on their 1954 return a gain from the sale of their old residence; and they also included in such return a detailed computation showing how the amount of the gain was arrived at. Such gain was not included in income; but rather, the petitioners appended a statement to their report of the gain, wherein they claimed that such gain was entitled to nonrecognition by reason of the provisions contained in section 1034 of the 1954 Code. Subsequently, respondent determined that such gain was recognizable, and he included the full taxable portion thereof in income. Thereafter petitioners filed an amended petition herein, in which they requested that they be allowed to compute the gain on the installment method, if the issue of nonrecognition should be decided adversely to them.

It is our opinion that, in the circumstances here present, petitioners did make a timely election to use the installment method. An election normally implies a choice between two or more alternatives. When petitioners on their return claimed the benefit of the nonrecognition of gain provisions, they were not then electing or making a choice between reporting such gain in its entirety on the one hand, and reporting only a portion of such gain under the installment method on the other hand. Rather, the first time when petitioners were faced with the necessity of making such an election or choice was when the respondent determined that the gain was includible in income. They then did elect in their amended petition to have the gain computed under the installment method, if it should be determined that the respondent was correct. As above stated, it is our opinion that such election was timely.

In Revenue Ruling 56-396, 1956-2 C.B. 298, the respondent considered a situation wherein a taxpayer disclosed a sale of his old residence on a timely return for the year of the sale, did not include such gain in income because of reliance upon the nonrecognition of gain provisions of the Code, and made no mention of the manner in which the gain would be reported in the event he failed to meet the requirements of nonrecognition of the gain. Respondent ruled that

in such situation, the taxpayer could, after an internal revenue examining officer had found that gain on the sale of such residence should be included in income because of the taxpayer's failure to meet the requirements for nonrecognition, obtain the benefit of the installment method, if he filed a written statement notifying the Commissioner of Internal Revenue of his failure to meet the nonrecognition requirements, and accompanied such statement with an amended return for the year of the sale whereon the gain was computed under the installment method. Thus, the respondent has in effect recognized that there is no statutory bar or insuperable administrative difficulty to permitting a taxpayer to elect the installment method, after the year in which the sale took place, and elsewhere than on the original return for said year.

We believe that the procedure outlined in the above-mentioned ruling is not the only one by which an election to use the installment method may be made after the filing of the return for the taxable year of the sale, particularly where a petition has been filed with this Court contesting the Commissioner's determination of nonrecognition. We think it is sufficient in the instant case that petitioners sought in their amended pleadings to have the benefit of the installment method, in the event they lost on the issue of recognition versus nonrecognition of the gain.

The facts and circumstances of the instant case are distinguishable from those in the cases relied upon by the respondent. In said cases, the taxpayer had either wholly failed to disclose the sale on his original return (*John W. Commons*, 20 T.C. 900), or had disclosed the transaction and elected to report the gain in full in the year of sale, rather than on the installment method (*Albert Vischia*, 26 T.C. 1027).

For all the foregoing reasons, we hold that the petitioners are entitled to have the gain on the sale of their old residence computed on the installment method provided in section 453 of the 1954 Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, dissents on issue 1.
MULRONEY, *J.*, dissents on issue 2.