Robert L. Griffin and Tommie Mae Griffin v. Commissioner.
Griffin v. Commissioner
Docket No. 4482-62.
United States Tax Court
T.C. Memo 1965-91; 1965 Tax Ct. Memo LEXIS 237; 24 T.C.M. (CCH) 467; T.C.M. (RIA) 65091; April 9, 1965
Raymond E. Ford, 121 N. 4th St., Ft. Pierce, Fla., for the petitioners. James D. Ritter, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: [1] Respondent determined a deficiency in the income tax of petitioners for the taxable year ended December 31, 1959, in the amount of $10,033.79. The only issue for decision is whether petitioners *238 are entitled to treat a 1959 sale of realty on the installment basis pursuant to section 453, Internal Revenue Code of 1954, on an amended joint Federal income tax return for the taxable year ended December 31, 1959, where they failed to make the election on their original return. Respondent's adjustments in his notice of deficiency relative to the increase in rental income in the amount of $646.80 and the decrease in farm loss in the amount of $2,934.18 are not contested by petitioners. Findings of Fact Some of the facts have been stipulated and are so found. Robert L. Griffin and Tommie Mae Griffin (hereinafter sometimes called petitioners) were husband and wife during the taxable year 1959, residing at 136 North 15th Street, Fort Pierce, Florida. They timely filed their original joint Federal income tax return for the taxable year 1959 with the district director of internal revenue, Jacksonville, Florida. Petitioners kept their books on a calendar year basis, using an accrual method of accounting. On April 15, 1958, petitioners entered into an option contract as sellers with Carl V. Rice (hereinafter called Rice) as buyer, with respect to the sale *239 of 100 acres of real property located in St. Lucie County, Florida. The option contract was prepared by an attorney, Thad H. Carlton (hereinafter called Carlton), in his law office in Fort Pierce, Florida. During the year 1958 Robert L. Griffin (hereinafter called petitioner) inquired of his attorney, Carlton, with respect to matters of Federal income taxes pertaining to the option contract of April 15, 1958. Carlton gave no advice to petitioner with respect to Federal income tax matters on the sale of the property under the option contract of April 15, 1958, and particularly no advice with respect to an election to treat the sale under the installment method pursuant to section 453 of the Internal Revenue Code of 1954. Carlton in his practice of law did not handle matters of Federal taxation and only inquired of his clients whether they had a good tax accountant or tax counsel if a tax problem was involved. Carlton knew that George F. Goff (hereinafter called Goff) was the petitioners' tax accountant. At the time of the execution of the option contract of April 15, 1958, Carlton called Goff and advised him of the proposed sale of the property under the *240 option contract. Goff prepared petitioners' Federal income tax returns for each year from 1951 to the time of the instant proceeding. Petitioner was not well-informed regarding tax statutes. He left school when he was 15 years old. On April 20, 1959, Rice and other persons assigned to Indian River Groves, Inc. (hereinafter sometimes called Indian River), a Florida corporation, all of their respective rights and interests under the option contract of April 15, 1958. On May 19, 1959, Indian River exercised its option to purchase the 100 acres of real property located in St. Lucie County, Florida, which was the subject of the option contract of April 15, 1958, assigned to Indian River. On June 15, 1959, the terms of the option contract having been fully met, petitioners executed and delivered a warranty deed conveying the 100 acres to Indian River. Indian River, in turn and in accordance with the option contract, executed and delivered to petitioners a mortgage deed encumbering the property so conveyed by the deed of June 15, 1959. Simultaneously with the execution and delivery of the mortgage to petitioners, Indian River gave its promissory note to petitioners dated June 15, 1959, which *241 provided for the payment of the principal and interest as follows: $50,000.00 Kansas City, Kansas, June 15, 1959. As hereinafter agreed, after date, for value received, the undersigned promises to pay to the order of Robert L. Griffin and Tommie M. Griffin, his wife, at Florida Bank of Fort Pierce, Florida, or at such other place as the holder hereof may from time to time designate, the principal sum of Fifty Thousand Dollars, together with interest upon the amount thereof remaining unpaid from time to time at the rate of five per centum (5%) per annum from the date hereof until paid, interest payable semi-annually. And it is hereby agreed that the said principal sum shall be paid in ten annual installments of Five Thousand Dollars, ($5,000.00) each, beginning July 1, 1964, and continuing on the first day of July of each year until the whole amount is fully paid. Should default be made in the payment of any of said installments or the interest aforesaid at the times and in the manner aforesaid and such default shall continue for a period of thirty days (time being of the essence of this agreement), then at the option of the holder hereof the entire amount of said principal *242 then remaining unpaid, together with all interest then accrued thereon, shall immediately become and be due and payable and collectible without notice or demand therefor. And if this note shall become in default and shall be placed in the hands of an attorney for collection, the undersigned agrees to pay to the holder hereof a reasonable attorney's fee for the collection hereof. This note is secured by a purchase money mortgage of even date herewith on certain property in St. Lucie County, Florida. INDIAN RIVER GROVES, INC. By BOB GEORGE / Vice President Attest: CLAUDE L. RICE / Secretary (CORPORATE SEAL) Carlton represented the petitioners during the entire closing of the transaction relating to the sale of the 100 acres of real property. The deed was executed in Carlton's office. Petitioners devised a system of recording all their business transactions on a worksheet which included, inter alia, receipts, sales of cattle, rental property, sales of land and interest. During the year 1957 petitioners sold two parcels of property and recorded the sales on their worksheets, which were submitted to Goff. Goff prepared the petitioners' Federal income tax returns for the *243 taxable years 1957 and 1959, at least in part, from the worksheets prepared by petitioners. The worksheets submitted to Goff for preparation of the original joint Federal income tax return for the taxable year 1959 did not advise Goff of the sale to Indian River on June 15, 1959, of the 100 acres of real property involved therein. Petitioners' original return for 1959, as prepared by Goff, reflected the two sales of property in 1957 and reported them under the installment method. The original return for 1959, including the attached sheet labeled "Capital Gains & Losses," which reflected the installment treatment of the two 1957 sales of property, were furnished by Goff to the petitioners prior to filing. On their original return for 1959 the petitioners did not mention the sale of the 100 acres of land sold to Indian River on June 15, 1959. They also did not set forth in their original return for 1959, or in a statement attached thereto, an election under the installment method and a computation of the gross profit realized from the sale of the 100 acres of real property. Goff did not mention any of this information on the original 1959 return because he was not advised at the *244 time of preparing the return that the sale had been consummated. Petitioners recorded on their worksheets, which were submitted to Goff for preparation of their original return for 1959, items of interest collected under the promissory note given to them by Indian River. Interest income in the amount of $1,943.33 was reported on the return as being received from Indian River. No part of the principal amount set forth in the promissory note was paid in 1959. Upon audit of petitioners' original 1959 return, the examining revenue agent of the Internal Revenue Service inquired of petitioner as to the circumstances of the item of interest of $1,943.33 reported as being derived from Indian River Groves, Inc. Petitioner then advised the revenue agent of the sale of the 100 acres of real property to Indian River Groves, Inc. Goff did not learn that the sale of the 100 acres had been consummated until after the audit of the revenue agent. Upon being advised of the sale, Goff prepared an amended joint Federal income tax return for petitioners for the taxable year 1959. The amended return of petitioners reported the sale of the 100 acres on an attached sheet labeled "Capital Gains & *245 Losses," as follows: Kind of
Date
Date
Gross Sales
Cost or
Expense
Property
Acquired
Sold
Price
Other Basis
of Sale
Land - 100
1949
7-1-59
$50,000.00
$4,000.00
$651.67
acres
Profit on
$45,348.33 / $50,000.00
= 90.697%
above
No Cash received during 1959 on the above sales price - Sale to be reported as installment sale. The first payment on the $50,000.00 sales price will be due in 1964. This transaction was omitted on original return due to misunderstanding on part of accountant as to date sale took place. Upon completion of the amended return Goff submitted it to petitioners for their signature. The return included the attached sheet labeled "Capital Gains & Losses," containing references to the installment sale treatment of the two sales in 1957. The petitioners filed their amended joint return for 1959 with the district director of internal revenue, Jacksonville, Florida, on July 21, 1961. In his statutory notice of deficiency dated August 21, 1962, respondent determined that petitioners realized a long-term capital gain in the amount of $45,348.33 from the sale to Indian River of the 100 acres of real property involved, *246 resulting in a taxable increase in capital gain in the amount of $22,513.86, after an allowable decrease in other capital gains in the amount of $320.61. Petitioners' failure to elect to report the sale of the 100-acre tract of real estate to Indian River Groves, Inc., in their original 1959 income tax return and to set forth the computation of gross profit thereon on the installment method pursuant to section 453 was not due to negligence or intentional disregard of rules and regulations. Opinion The sole issue for our consideration is whether petitioners are entitled to report their gain on the sale of a tract of real estate in 1959 on the installment basis under section 453(b) of the Internal Revenue Code of 1954. [2] Resolution of this issue depends on whether the petitioners' election to have the gain computed on such basis was timely made within the intendment of the statute. John F. Bayley, 35 T.C. 288, 297 (1960). *247 Section 1.453-8(b), Income Tax Regulations, promulgated September 17, 1958, in accordance with the statute, and made applicable to taxable years ending after December 17, 1958, provides, in part, as follows: (b) Sales of real property and casual sales of personal property. (1) A taxpayer who sells or otherwise disposes of real property, or who makes a casual sale or other casual disposition of personal property, and who elects to report the income therefrom on the installment method must set forth in his income tax return (or in a statement attached thereto) for the year of the sale or other disposition the computation of the gross profit on the sale or other disposition under the installment method. In any taxable year in which the taxpayer receives payments attributable to such sale or other disposition, he must also show in his income tax return the computation of the amount of income which is being reported in that year on such sale or other disposition. (2) The information required by subparagraph (1) of this paragraph must be submitted for each separate sale or other disposition but, in the case of multiple sales or other dispositions, separate *248 computations may be shown in a single statement. Respondent contends that petitioners, having failed to elect to report their profit on the real estate sale in question on the in-installment basis on a timely filed return for the year 1959, forfeited their right to elect the installment basis, so the entire profit is taxable in 1959, the year of sale. See Rev. Rul. 93, 1953-1 C.B. 82. In essence, respondent asserts that petitioners failed to make a timely election to report on the installment basis because the amended return, filed approximately one year and three months after the due date for filing a return for the taxable year 1959, was untimely; that, under section 1.453-8(b)(1), Income Tax Regs., [3] the phrase "return for the year of the sale" as used therein refers to a taxpayer's timely filed original return, and not an amended return; and that, in any event, petitioners are the sole parties responsible for the failure to make the election on the installment method and may not be excused for reasons of inadvertence or "honest error." *249 The record shows that on June 15, 1959, petitioners sold a 100-acre tract of realty to Indian River Groves, Inc., for $50,000. About the time the transaction was closed the petitioner received a promissory note in the amount of $50,000, providing for the semiannual payment of interest at the rate of five percent per annum on the unpaid balance from June 15, 1959. The first payment on the principal was not due until July 1, 1964. Petitioners' net gain from the sale was in the amount of $45,348.33. Petitioners timely filed their original return for 1959 and did not report thereon either the fact that the sale occurred or a computation of the gross profit on the sale under the installment method. During 1959 petitioners received interest in the amount of $1,943.33, and they included such amount on their original return as interest income from "Indian River Groves" in the amount of $1,943.33. After a revenue agent audited petitioners' return for 1959, they filed, on the advice of their accountant, an amended return for the year 1959 on July 21, 1961, and reported the sale of the realty as a long-term capital gain, setting forth the election to return the gain therefrom on the installment *250 basis pursuant to section 453, supra. We find no merit in respondent's primary contention that, on these facts, petitioners have forfeited their right to elect the installment basis. Admittedly, respondent's contention finds some support in some of the language used in earlier opinions of this Court. See Sarah Briarly, 29 B.T.A. 256 (1933); W. T. Thrift, Sr., 15 T.C. 366 (1950); Cedar Valley Distillery, Inc., 16 T.C. 870 (1951); and W. A. Ireland, 32 T.C. 994 (1959). But in most of these cases there had been either a complete failure to report any income from the transaction in the original return for the year of sale, or no amended return had been filed, or an affirmative election had been made in the return filed to report the sale on some basis inconsistent with the installment method. See also Pacific Nat. Co. v. Welch, 304 U.S. 191 (1938); Jacobs v. Commissioner, 224 F. 2d 412 (C.A. 9, 1955), affirming 21 T.C. 165 (1953). However, in more recent cases, this Court has not always adhered to the strict rule enunciated by respondent in Rev. Rul. 93, supra. See John F. Bayey, supra; *251 Jack Farber, 36 T.C. 1142 (1961), affd. 312 F. 2d 729 (C.A. 2, 1963) without mention of this issue, certiorari denied 374 U.S. 828 (1963); Nathan C. Spivey, 40 T.C. 1051 (1963); and John P. Reaver, 42 T.C. 72 (1964). In these cases where the forfeiture rule was not applied, all of which were decided under the prior regulations, the principal reason given was that neither the statute nor the applicable regulation specifically required that an affirmative election to use the installment method be made in a timely return for the year of sale or be forfeited, and that, Congress having provided other sanctions for failure to report income and for failure to file returns on time, it was not intended that the privilege of installment reporting be denied a taxpayer for similar negligent or non-negligent omissions. John P. Reaver, supra at p. 79. In the instant case respondent claims additional support for his primary contention under section 1.453-8(b)(1), Income Tax Regs. Respondent argues that an amended return is not an original return within the intendment of the regulation, and the *252 regulation makes it mandatory for a taxpayer who wishes to benefit from section 453 to elect affirmatively to report the income from such sale on the installment method and report in his income tax return (or a statement attached thereto) for the year of the sale the computation of the gross profit on the sale. In our view respondent would have us read into the statute requirements not found there. The statute does not contain any provision that the taxpayer must make an express election in the actual year of sale in order to obtain the benefits available to him under section 453. See United States v. Eversman, 133 F. 2d 261 (C.A. 6, 1943). Section 453 has its origin in section 212(d) of the Revenue Act of 1926. There is nothing in the legislative history of the installment reporting provisions to indicate that it was intended that a taxpayer who was not a dealer could not elect to report the gain on the sale of a capital asset on the installment basis by an amended return. John P. Reaver, supra at pp. 79-80. Moreover, section 1.453-8(b)(1) of the regulations does not provide that a taxpayer must affirmatively elect to report a casual sale of real estate on *253 the installment method in an original and timely return for the year of sale. We recently had occasion to consider the same contention advanced by respondent with respect to section 1.453-8(b)(1) in John P. Reaver, supra. In that case the taxpayers sold real estate and received part of the purchase price in 1958, the year of sale. This part payment was included in taxpayers' gross receipts from their business on their original return for 1958 which was not filed until October 1959. After auditing the taxpayers' returns for 1958 and 1959, the Commissioner determined that the entire gain on the sale of the property was taxable to the taxpayers as a long-term capital gain in 1958. The taxpayers, in August 1961, filed an amended return for 1958, reporting the sale as a capital transaction and electing to report the gain therefrom on the installment method. In determining that the taxpayers were entitled to return the income and profit on the sale of the real estate on the installment basis, we said at page 80: Neither the statute nor the regulations specifically require that the taxpayer must elect to report a casual sale of real estate on the installment method in a timely *254 filed return. As previously noted, the installment sale provisions in both the 1939 Code and section 453(b) of the 1954 Code simply provide that, if the limitations with respect to the payments received during the year of sale are met, the profit on a sale of real property may be returned on the installment basis, under regulations prescribed by the Secretary. The regulations under the 1939 Code, Regs. 118, sec. 39.44-3, provided only that a "vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received" without mention of the time or method of making an election. The regulation promulgated in 1958 under section 453 of the 1954 Code, sec. 1.453-8(b)(1) heretofore quoted, does not provide that the election must be made on an original return timely filed, but only that one who elects to report a forth in his return for the year of sale the computation of the gross profit on the sale. This regulation has been found to be reasonable and valid by the Court of Appeals for the Tenth Circuit in Ackerman v. United States, 318 F. 2d 402 (1963), * * *. The Commissioner has been given rather broad rulemaking *255 authority by section 453 and it would seem that if he considered it to be a reasonable and valid requirement under the statute that an affirmative election to use the installment method be made in an original and timely filed return for the year of sale, he would so provide in his regulation. It is interesting to note that paragraph (a) of this same section of the regulations, sec. 1.453-8(a), relating to dealers in personal property, was amended by T.D. 6682, I.R.B. 1963-45, 10, filed Oct. 15, 1963, to specifically provide that an election by a dealer in personal property to adopt or change to the installment method "must be made on an income tax return for the taxable year of the election, filed on or before the time specified (including extensions thereof) for filing such return." There may be more reason to require a dealer in personal property to make the election in a timely filed return than for taxpayers making casual sales of property, but this indicates that the omission of a similar requirement in the part of the regulation here involved could hardly be due to oversight. Applying the rationale of the Reaver case, it is our opinion that, under the circumstances *256 here present, petitioners did make a timely election to use the installment method. We find no statutory bar or insuperable administrative difficulty in permitting a taxpayer to elect the installment method after the year in which the sale took place by means of an amended return. John F. Bayley, supra at p. 299; and The Glidden Co. v. United States, an unreported case (N.D. Ohio 1964), 65-1 U.S.T.C. [*] 9107, 14 A.F.T.R. 2d 5999. Respondent stresses, on brief, that section 1.453-8(b)(1) has been held to be a valid and reasonable implementation of the statute in Ackerman v. United States, 205 F. Supp. 365 (D. Wyo. 1962), affd. 318 F. 2d 402 (C.A. 10, 1963) and, hence, the regulation should govern the instant case. After comparing the factual situations involved, we have concluded that Ackerman is not controlling here. In Ackerman, the taxpayer sold real estate in 1958 but did not report the sale on the installment basis on her 1958 original return or in an amended return. However, she reported the sale on the installment basis in 1959, that being the first year in which she received any payment under the sale. The Court held *257 for the Government after finding that under section 453 and the correlative regulation the taxpayer was obliged to elect to report the income from the sale on the installment basis in the year of sale, although no payment was received in that year. By contrast, the petitioners here have complied with section 1.453-8(b)(1) through an amended return for 1959, reporting the sale on the installment basis for the year of sale. The regulation involved does not require that the election be made on an original return timely filed. John P. Reaver, supra at p. 80. Respondent further contends that petitioners forfeited their right to an election under the installment method because their failure to disclose the fact of the sale in 1959 and to make the election under section 453 on their original return is "tantamount to willful negligence." In the same vein respondent urges that petitioners have failed to show good cause for their failure to report the sale in controversy on the installment basis in their original return; and that they are solely to blame for not advising their accountant of the transaction so that a proper handling could have been made of the sale on their original *258 return. We disagree. The record does not support this contention. It is true that there appears to be a possible conflict between petitioner and the accountant as to when petitioner turned over the necessary data to the accountant. However, whether we accept or reject petitioner's version or the accountant's version, our ultimate determination is not affected. It is quite possible that both the taxpayer and the accountant were faulty in their recollection covering a period of several years earlier than 1961, at which time the accountant clearly agrees that he was notified of the facts relating to the sale in question. It is also quite possible that petitioner, who had a limited education, when turning over the amount of interest earned ($1,943.33) for income tax purposes, assumed that the accountant would know or inquire as to the underlying circumstances. We are mindful that petitioner did not mention the sale transaction in his original 1959 return, except to report interest received on the sale, and that he did not make an election to report the sale until after the revenue agent's audit. But, on the other hand, no attempt was made by the petitioner to second-guess the Government *259 or to treat the sale in an inconsistent manner. Petitioner's failure to claim the benefits of section 453 on his return in the year of sale is not fatal to its allowance so long as the return of the year of sale is still open to adjustment. It seems to us that the addition to tax provisions for negligence and for failure to make a timely estimate provide the Commissioner and the courts with sufficient power to penalize the taxpayer for such omissions. And, of course, it is axiomatic that the "law does not lightly impose penalties and courts look with disfavor on forfeitures." Marion C' deBaca v. Commissioner, 326 F. 2d 189, 191 (C.A. 5, 1964), reversing 38 T.C. 609 (1962); F. E. McGillick Co., 42 T.C. 1059 (1964). In John P. Reaver, supra, where the taxpayer also filed an amended return, we said at page 81: Generally, an election is to be exercised, when the occasion for doing so arises. See Jack Farber [36 T.C. 1142 (1961), affd. 312 F. 2d 729 (1963), certiorari denied 374 U.S. 828 (1963)]. Here, petitioners made an honest mistake and rectified it at the first opportunity. We discern *260 no reason why petitioners' amended return for the year of sale, filed within the period for determining a deficiency for 1958 or for any year affected, should not be deemed to be compliance with the requirements of the regulations. Petitioners have never adopted any position inconsistent with that reflected in the amended return; they have never represented that they were using any other method to account for their gain on the sale; the entire receipts were included in income; all the information required by the regulations was supplied in the amended return; and respondent at no time could have been misled to his disadvantage. On the authority of our recent decisions in John F. Bayley, jack Farber, and Nathan C. Spivey, all supra, and having due regard to the views expressed by the Courts of Appeals for the Fifth and Sixth Circuits, we hold that, under the circumstances here present, these petitioners are entitled to report their gain on the sale on the installment method. Considering the evidence in its entirety, we are persuaded that the Government was apprised of the facts of the transaction under review in a timely filed return; and that petitioners' omission of the election *261 in the original return for 1959 was not due to an intentional disregard of rules and regulations. To deny petitioners the privilege of using the installment basis under these particular circumstances would invoke a heavy sanction not expressly authorized in either the statute or the regulations. In view of this conclusion, it is unnecessary for us to consider the problem of "honest error." See Hornberger v. Commissioner, 289 F. 2d 602 (C.A. 5, 1961), reversing a Memorandum Opinion of this Court. Finally, we think that section 1.453-8(b)(1) of the regulations, which was not applicable in Hornberger v. Commissioner, supra, does not authorize a penalty where, as here, there is a non-negligent omission. See F. E. McGillick Co., supra; and Nunn v. Gray, 196 F. Supp. 305 (W.D. Ky. 1961). Accordingly, we hold, on this record, that petitioners are entitled to have the gain on the sale of the real estate sold in 1959 computed on the installment method provided in section 453. Decision will be entered under Rule 50. Footnotes
1. This case was heard by Judge Morton P. Fisher and briefs were duly filed. Judge Fisher died on February 11, 1965. This case, not having been disposed of, was reassigned to Judge Howard A. Dawson, Jr.↩, on February 23, 1965.
2. SEC. 453. INSTALLMENT METHOD. (a) Dealers in Personal Property. - Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. (b) Sales of Realty and Casual Sales of Personalty. - (1) General rule. - Income from - (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer is on hand at the close of the taxable year) for a price exceeding l100 , may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).↩
3. Section 1.453-8(b)(1) of the Income Tax Regs.↩ applies to petitioners' taxable year ended December 31, 1959, since the section applies to taxable years ending after December 17, 1958, pursuant to section 1.453-10(b) of the regulations.