Richard W. Henzel and Elizabeth Henzel v. Commissioner.
Henzel v. Commissioner
Docket No. 253-64.
United States Tax Court
T.C. Memo 1965-250; 1965 Tax Ct. Memo LEXIS 81; 24 T.C.M. (CCH) 1344; T.C.M. (RIA) 65250; September 16, 1965
H. F. Smith, for the petitioners. James A. Thomas, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioners' income tax for the taxable year 1960 in the amount of $5,949.72. The only issue for decision is whether petitioners met the conditions of section 1034, Internal Revenue Code of 1954, so that the gain on the sale of their old residence would not be recognized. Findings of Fact Some of the facts have been stipulated, are so found, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioners, Richard W. Henzel and Elizabeth Henzel, are husband and wife residing in Klamath Falls, Oregon. They filed a timely joint Federal income *82 tax return for the taxable year 1960 with the district director of internal revenue, Portland, Oregon. In December 1955 petitioners purchased a house located on Tract One of Junction Acres, Klamath County, Oregon. Petitioners occupied this house as their sole residence continuously from December 1955 until approximately June 8, 1960. Sometime prior to May 5, 1960, petitioners decided to sell their personal residence at Junction Acres. On May 5, 1960, petitioners purchased a house located at 840 Pacific Terrace, Klamath Falls, at a total cost of $16,197.75. On May 16, 1960, petitioners sold their Junction Acres residence for $56,500, realizing a net gain of $23,798.88. Shortly after the May 16, 1960, sale of the Junction Acres residence, petitioners, on June 8, 1960, moved into the newly purchased house at 840 Pacific Terrace. Petitioners occupied this house as their sole residence from that date until December 5, 1962. During the years 1960 and 1961, petitioners expended $9,014.88 and $241.40, respectively, for capital improvements to their Pacific Terrace residence. Petitioners sold their old residence so that they could build a new house closer to the town of Klamath Falls. *83 On June 28, 1960, petitioners, for the purpose of building a new residence, purchased a lot at 259 Southshore Lane, Klamath Falls, for $6,000. No work was performed on this lot until May 1, 1961, when petitioners had several trees removed from the property at a cost of $350. In June 1960, petitioners first contacted the architect whom they eventually employed to draw plans and specifications for the new house to be constructed on the Southshore Lane lot. At the architect's suggestion, petitioners had a topographic map of the lot prepared by others. This map was dated August 2, 1960. In February 1961, petitioners actually employed the architect to draw plans and specifications for the proposed Southshore Lane house. The architect's fee, amounting to $5,957.52, was paid $2,000 on or about May 17, 1961, and the balance on or about September 15, 1961. On August 23, 1961, petitioners entered into a construction agreement with a building contractor for the construction of the proposed Southshore Lane house. While the original construction price agreed upon was $74,469, subsequent additions ordered by petitioners during construction increased the final construction price to more than *84 $80,000. Article 2 of the construction agreement provided: The work to be performed under this Contract shall be commenced Immediately and shall be substantially completed [within] 150 days. It is agreed time is of the essence. The Contractor will make every effort to have in place by November 18, 1961 at least $44,000.00 of the contracted work in order to comply with the Owners tax deadline. Actual construction of the Southshore Lane house was commenced by the contractor shortly after execution of the construction agreement. On November 15, 1961, petitioners had expended $44,598.50 on the construction of the Southshore Lane house. Construction work on this house was halted for approximately three months, beginning sometime after November 16, 1961, due to severe weather. Construction work was resumed in March 1962. Due to certain problems, arising subsequent to November 1961, construction of the Southshore Lane house was not finally completed until shortly before December 5, 1962. On December 5, 1962, petitioners moved their furniture and personal belongings from their Pacific Terrace house into the recently completed Southshore Lane house, and for the first time slept in *85 the Southshore Lane house the night of December 5, 1962. Prior to December 5, 1962, petitioners ate their meals, slept, and received their mail and telephone calls at their Pacific Terrace home. Petitioners did not report the gain from the sale of their old residence on their income tax return for 1960. Respondent has determined that the gain is taxable in 1960 in that petitioners are not entitled to the nonrecognition provisions of section 1034, Internal Revenue Code of 1954. Opinion Petitioners, although recognizing that they did not literally comply with the provisions of section 1034 in that they did not "use" the new residence within 18 months from the sale of the old residence, [1] argue that substantial compliance with the section is all that is necessary to obtain its benefits. Petitioners assert that they made every effort to comply with the "18-month" requirement and that the failure to finish the new residence in time was caused by circumstances beyond their control. *86 Respondent, on the other hand, contends that petitioners' failure to comply with the "18-month" requirement prevents petitioners from obtaining the nonrecognition benefits of the section. We agree with respondent. The question we have to decide is whether petitioners are entitled to the benefits of section 1034 although they did not use their new residence until long after the 18-month period had expired. This very issue has been decided by this Court on facts almost identical with those herein. In John F. Bayley, 35 T.C. 288 (1960), this Court held that "use" of the new residence before the expiration of 18 months from the sale of the old residence was a necessary prerequisite before one could obtain the benefits of the section. We also stated that "use" meant "physical occupancy, i.e., that the owners must live therein." In reaching its conclusion, this Court had occasion to explore the legislative history and committee reports pertaining to section 1034 and its predecessor. Nothing further could be accomplished by our restating the reasons for reaching such a conclusion. The petitioners herein have advanced no new arguments or theories which have not already been *87 discussed and rejected by this Court in John F. Bayley, supra.See also United States v. Sheahan, 323 F. 2d 383 (C.A. 5, 1963). Accordingly, Decision will be entered for the respondent. Footnotes
1. SEC. 1034. SALE OR EXCHANGE OF RESIDENCE. (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence. * * *
(c) Rules for Application of Section. - For purposes of this section: * * *
(5) In the case of a new residence the construction of which was commenced by the taxpayer before the expiration of one year after the date of the sale of the old residence, the period specified in subsection (a), and the 1 year referred to in paragraph (4) of this subsection, shall be treated as including a period of 18 months beginning with the date of the sale of the old residence. * * *↩